UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
AIRBNB, INC.,

                                    Plaintiff,                18 Civ. 7712 (PAE)
                                                              18 Civ. 7742 (PAE)
              -against-

THE CITY OF NEW YORK,

                                    Defendant.
-----------------------------------------------------------------------x
HOMEAWAY. COM, INC.,

                                    Plaintiff,

              -against-

CITY OF NEW YORK,

                                    Defendant.
-----------------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTIONS FOR A PRELIMINARY INJUNCTION**


                                              **ZACHARY W. CARTER**
                                              Corporation Counsel of the
                                                City of New York
                                              Attorney for Defendant
                                              100 Church Street
                                              New York, NY 10007
                                              Tel: (212) 356-2208
                                              Fax: (212) 356-2019

September 24, 2018

Sheryl Neufeld,
Karen B. Selvin,
Carlos Fernando Ugalde Alvarez,
         *of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 3

        A.     The City's Regulation of Transient Uses of Permanent Residences .................................................... 3

        B.     Local Law 146 .......................................................................... 4

        C.     Plaintiffs' Platforms ................................................................ 5

ARGUMENT ............................................................................................................. 6

     POINT I ........................................................................................... 6

     PLAINTIFFS HAVE NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS ............................................................. 6

        A.     Plaintiffs Cannot Show Likelihood of Success on Fourth Amendment Claims ........................................... 7

             1.     Plaintiffs' Fourth Amendment Claims Asserted on Behalf of Their Hosts Fail as a Matter of Law. ................... 7

                   a.     Plaintiffs Lack Standing to Assert Fourth Amendment Claims on Behalf of Their Hosts ......... 7

                   b.     Plaintiffs' Hosts Lack a Reasonable Expectation of Privacy in the Requested Transactional Records. ............................................... 9

                   c.     Plaintiffs' Hosts Have Already Consented to Disclosure. ........................................................ 12

             2.     Plaintiffs' Own Fourth Amendment Claims Fail as a Matter of Law. ................................................. 14

                   a.     Plaintiffs Lack a Reasonable Expectation of Privacy in their Hosts' Short-Term Rental Transactional Records. ............................... 14

| | | | |
|---|---|---|---|
| | b. | Assuming *Arguendo* that *Patel* Does Apply, the Instant Action Constitutes Pre-Compliance Review. | 16 |
| B. | | Plaintiffs' Article I, Section 12 Claims Fail | 17 |
| C. | | Local Law 146 Is Not Preempted by the SCA | 18 |
| | 1. | The SCA Does Not Protect Communications or Records That Are Readily Accessible to the Public. | 18 |
| | 2. | Local Law 146's Disclosure Provision Is Consistent with the SCA | 19 |
| | | a. Local Law 146 Is Not Facially Preempted Under the SCA Because Not All "Booking Services" Are Covered Service Providers. | 20 |
| | | b. Local Law 146 Provides for Host Consent to Disclosure. | 21 |
| | | c. The SCA Does Not Require Governmental Entities to Obtain Consent to Disclosure Directly from the Subscriber. | 22 |
| | | d. Local Law 146's Consent Provision Is Lawful and Does Not Compel or Coerce Consent from Plaintiffs' Hosts. | 24 |
| D. | | Local Law 146 Does Not Compel Speech in Violation of First Amendment. | 27 |
| | 1. | Plaintiffs' Privacy Policies Satisfy the Consent Requirement. | 28 |
| | 2. | Local Law 146 Regulates Conduct, Not Speech. | 28 |
| | 3. | Assuming *Arguendo* that Local Law 146 Compels Speech, It Is Rationally Related to the Goals of Reducing Illegal Transient Use, Preserving Permanent Housing, and Ensuring Public Safety. | 29 |
| | | a. Local Law 146 Satisfies the Rational Basis Test | 31 |

**Page**

           b.      If *Zauderer* Does Not Apply, Local Law 146
                    Still Satisfies the Intermediate Scrutiny
                    Standard of Review. ................................................ 33

POINT II ........................................................................................................... 34

      PLAINTIFFS HAVE FAILED TO SHOW
      IRREPARABLE HARM. ......................................................................... 34

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

A.B.C. Home Furnishings v. Town of E. Hampton,
    947 F. Supp. 635 (E.D.N.Y. 1996) ....................................................................27

Able v. United States,
    44 F.3d 128 (2d Cir. 1995)..............................................................................6

Airbnb, Inc. v. City & Cty. of S.F.,
    217 F. Supp. 3d 1066 (N.D. Cal. 2016) ..........................................................14

Ajemian v. Yahoo!, Inc.,
    478 Mass. 169 (2017) ....................................................................................26

Alderman v. United States,
    394 U.S. 165 (1969)........................................................................................8

In re Application for Tel. Info. Needed for a Criminal Investigation,
    119 F. Supp. 3d 1011 (N.D. Cal. 2015) ..........................................................25

In re Application of the United States for an Order Pursuant to 18 U.S.C. 2705(b),
    289 F. Supp. 3d 201 (D.D.C. 2018) ................................................................20

Beal v. Stern,
    184 F.3d 117 (2d Cir. 1999)............................................................................6

Boelter v. Advance Magazine Publrs. Inc.,
    210 F. Supp. 3d 579 (S.D.N.Y. 2016)..............................................................33

Brown v. Louisiana,
    383 U.S. 131 (1966)........................................................................................29

Bumper v. North Carolina,
    391 U.S. 543 (1968)........................................................................................12

Bush v. Vera,
    517 U.S. 952 (1996)........................................................................................6

California Bankers Ass'n v. Shultz,
    416 U.S. 21 (1974)..........................................................................................9

Carpenter v. United States,
    138 S. Ct. 2206 (2018)....................................................................................11

Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of N. Y.,
    447 U.S. 557 (1980)........................................................................30, 32, 33

City & Cty. of S.F. v. HomeAway.com, Inc.,
    21 Cal. App. 5th 1116, 1132 (Cal. Ct. App. 2018) ........................................................8, 10, 12

City of Los Angeles v. Patel,
    135 S. Ct. 2443 (2015)........................................................................................14, 15, 16, 17

Envtl. Encapsulating Corp. v. New York,
    855 F.2d 48 (2d Cir. 1988)...............................................................................................18

Florida Bar v. Went For It, Inc.,
    515 U.S. 618 (1995)..........................................................................................................30

Forest City Daly Hous., Inc. v. Town of N. Hempstead,
    175 F.3d 144 (2d Cir. 1999)...............................................................................................6

Freedman v. Am. Online, Inc.,
    303 F. Supp. 2d 121 (D. Conn. 2004)..............................................................................24

Freedom Holdings, Inc. v. Spitzer,
    408 F.3d 112 (2d Cir. 2005)..............................................................................................35

Frost v. R.R. Comm'n,
    271 U.S. 583 (1926)..........................................................................................................13

Harris v. Sullivan,
    968 F.2d 263 (2d Cir. 1992)..............................................................................................22

Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,
    455 U.S. 489 (1982)............................................................................................................7

Homeaway.com, Inc. v. City of Portland,
    No. 3:17-cv-00091, ECF No. 36 (D. Or. Mar. 27, 2011) ..................................................14, 21

HomeAway.com, Inc. v. City of Portland,
    No. 91-2017, 2017 U.S. Dist. LEXIS 74880 (D. Or. May 11, 2017) ......................................19

Horton v. California,
    496 U.S. 128 (1990)............................................................................................................9

IBP, Inc. v. Alvarez,
    546 U.S. 21 (2005)............................................................................................................26

Jones v. Rath Packing Co.,
    430 U.S. 519 (1977)..........................................................................................................18

JSG Trading Corp. v. Tray-Wrap, Inc.,
    917 F.2d 75 (2d Cir. 1990)..................................................................................................6

Katz v. United States,
 389 U.S. 347 (1967)...........................................................................................9

Keep Chi. Livable v. City of Chicago,
 No. 16-10371, 2017 U.S. Dist. LEXIS 35231 (N.D. Ill. Mar. 13, 2017)................................29

Krause v. Penny,
 837 F.2d 595 (2d Cir. 1988)...............................................................................12

Lewis v. Thompson,
 252 F.3d 567 (2d Cir. 2001)...............................................................................31

Metropolitan Life Ins. Co. v. Massachusetts,
 471 U.S. 724 (1985)..........................................................................................18

Microsoft Corp. v. U.S. Dep't of Justice,
 233 F. Supp. 3d 887 (W.D. Wash. 2017)..................................................................8

Mincey v. Arizona,
 437 U.S. 385 (1978)..........................................................................................12

Moore v. Consol. Edison Co. of N.Y., Inc.,
 409 F.3d 506 (2d Cir. 2005)...............................................................................35

N.Y. State Restaurant Ass'n v. N.Y.C. Bd. of Health,
 556 F. 3d 114 (2d Cir. 2009)..............................................................................30

Nat'l Elec. Mfrs. Ass'n v. Sorrell,
 272 F.3d 104 (2d Cir. 2001).........................................................................30, 31

Natural Res. Def. Council, Inc. v. Muszynski,
 268 F.3d 91 (2d Cir. 2001)................................................................................23

New Yorkers Making Ends Meet in the Sharing Economy v. Airbnb, Inc.,
 Index No. 158526/14, Doc. No. 24 (Sup. Ct. N.Y. Cty.).............................................19

People v. Pierre,
 29 N.Y.S.3d 110 (Sup. Ct. Kings Cty. 2016) .........................................................25

Plumhoff v. Rickard,
 134 S. Ct. 2012 (2014)......................................................................................8

Powers v. Ohio,
 499 U.S. 400 (1991).........................................................................................8

Raines v. Byrd,
 521 U.S. 811 (1997).........................................................................................7

Reed v. Town of Gilbert,
    135 S. Ct. 2218 (2015)...................................................................................33

Rousset v. AT&T Inc.,
    No. 14-0843, 2015 U.S. Dist. LEXIS 172113 (W.D. Tex. Dec. 28, 2015) ............................25

Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,
    547 U.S. 47 (2006)......................................................................................29

Schneckloth v. Bustamonte,
    412 U.S. 218 (1973)....................................................................................12

See v. Seattle,
    387 U.S. 541, 545 (1967)...............................................................................17

Smith v. Maryland,
    442 U.S. 735 (1979)...........................................................................9, 10, 12

Snow v. Direct TV, Inc.,
    450 F.3d 1314 (11th Cir. 2006) .......................................................................19

Sorrell v. IMS Health Inc.,
    564 U.S. 552 (2011)....................................................................................29

Telecom. Regulatory Bd. v. CTIA - The Wireless Assn.,
    752 F.3d 60 (1st Cir. 2014)............................................................................21

Texas v. Johnson,
    491 U.S. 397 (1989)....................................................................................29

Tinker v. Des Moines Indep. Cmty. Sch. Dist.,
    393 U.S. 503 (1969)....................................................................................29

Tucker Anthony Realty Corp. v. Schlesinger,
    888 F.2d 969 (2d Cir. 1989)...........................................................................34

Turner Broad. Sys., Inc. v. FCC,
    512 U.S. 622 (1994)....................................................................................33

United States v. Amen,
    831 F.2d 373 (2d Cir. 1987)......................................................................22, 26

United States v. Caronia,
    703 F.3d 149 (2d Cir. 2012)...........................................................................33

United States v. Castleman,
    572 U.S. 157 (2014)....................................................................................26

United States v. Dauray,
  215 F.3d 257 (2d Cir. 2000)................................................................................23, 24

United States v. Deutsch,
  987 F.2d 878 (2d Cir. 1993)....................................................................................12

United States v. DiTomasso,
  56 F. Supp. 3d 584 (S.D.N.Y. 2014).......................................................................25

United States v. Knotts,
  460 U.S. 276 (1983).............................................................................................9, 10

United States v. Miller,
  425 U.S. 435 (1976).....................................................................................10, 11, 12

United States v. Salerno,
  481 U.S. 739 (1987)..................................................................................................7

United States v. Turkette,
  452 U.S. 576 (1981)................................................................................................23

United States v. Ulbricht,
  858 F.3d 71 (2d Cir. 2017).....................................................................................10

United States v. Warshak,
  631 F.3d 266 (6th Cir. 2010) .................................................................................11

Virginia v. Hicks,
  539 U.S. 113 (2003)................................................................................................29

Ward v. Rock Against Racism,
  491 U.S. 781 (1989)..................................................................................................7

Wooley v. Maynard,
  430 U.S. 705 (1977)................................................................................................27

In re Yahoo Mail Litig.,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) .....................................................................25

Zauderer v. Office of Disciplinary Counsel,
  471 U.S. 626 (1985)................................................................................................30

**Statutes**

18 U.S.C. § 2510...........................................................................................19, 21, 26

18 U.S.C. § 2511...............................................................................................19, 26

18 U.S.C. §§ 2701-11 ...............................................................................................18

18 U.S.C. § 2702 .................................................................................................................*Passim*

18 U.S.C. § 2703 .................................................................................................................*Passim*

18 U.S.C. § 2707 ...............................................................................................................20, 35

18 U.S.C. § 2711 ......................................................................................................................21

42 U.S.C. § 1983 ........................................................................................................................9

42 U.S.C. § 1988 ........................................................................................................................9

47 U.S.C. § 230 ........................................................................................................................14

Admin. Code § 26-2101 ........................................................................................................5, 20

Admin. Code § 26-2102 ......................................................................................................*Passim*

Admin. Code § 26-2103 ............................................................................................................18

Admin. Code. § 26-2104 .......................................................................................................5, 16

Admin. Code. § 26-2105 .........................................................................................................5, 7

Admin. Code § 27-265 ..........................................................................................................4, 32

Admin. Code § 27-287.1 ............................................................................................................4

Admin. Code § 28-118.3.2 .....................................................................................................4, 32

Admin. Code § 28-210.3 ........................................................................................................4, 32

Admin. Code § 27-2004 .........................................................................................................4, 32

Building Code § 310.1.2 ........................................................................................................4, 32

Building Code § 310.2 ...........................................................................................................4, 32

Local Law 146, § 2 ....................................................................................................................7

Multiple Dwelling Law § 4(8) ...............................................................................................4, 32

Multiple Dwelling Law § 121 ....................................................................................................4

## PRELIMINARY STATEMENT

Plaintiffs Airbnb, Inc. ("Airbnb") and HomeAway.com, Inc. ("HomeAway") (collectively the "Plaintiffs") have made millions of dollars facilitating illegal and unsafe short-term (*i.e.* less than thirty (30) days) rentals in New York City ("City").[1]  Plaintiffs allow their online platforms to be utilized as marketplaces where commercial operators and individuals advertise residences intended for permanent housing for short-term stays in violation of both State and local law.  In doing so, these online booking services have enabled an exponential growth of illegal transient use in the City, which has not only exacerbated the City's well-known shortage of affordable permanent housing, but has also created a public nuisance endangering the safety and comfort of its communities.  Now, once again putting their own profits over the safety and security of the City's residents and visitors, Plaintiffs seek to enjoin Local Law No. 146 of 2018 ("Local Law 146"), a law passed unanimously by the New York City Council ("City Council") and signed by the Mayor, that will require online booking services, such as Airbnb and HomeAway, to regularly report to the City a limited amount of transactional information regarding their hosts' short-term rentals in the City.  As Plaintiffs neither establish a likelihood of success on the merits of their claims under the First and Fourth Amendments to the United States Constitution, the Supremacy Clause of the United States Constitution, and Article I, Sections 8 and 12 of the New York State Constitution, nor irreparable harm, their motions for a preliminary injunction must be denied.[2]

First, Plaintiffs' claims that Local Law 146 constitutes an illegal search under the Fourth Amendment of the United States Constitution and Article I, Section 12 of the New York

---

[1] According to Bloomberg.com, Airbnb and its hosts are on track to generate $140 million in gross bookings in New York City this year.  See https://www.bloomberg.com/news/articles/2018-07-24/airbnb-s-nyc-bookings-could-be-cut-in-half-by-new-rule (last visited September 24, 2018).

[2] Plaintiffs assert facial challenges to Local Law 146.  See Airbnb Memo. at 2-3, 15, 17, 23, 27-28; HomeAway Memo. at 2-3, 15-16.  To the extent it can be construed that Plaintiffs also assert as-applied challenges, they too fail.

State Constitution lack merit.  To the extent that Plaintiffs attempt to stand in the shoes of their hosts, the only parties whose information will be disclosed to the City, they lack standing to do so.  In any event, those hosts lack a reasonable expectation of privacy in records they have voluntarily disclosed to the Plaintiffs and others.  As for Plaintiffs' self-serving characterization of the transactional information to be disclosed to the City as commercially-sensitive business records in which they also retain a reasonable expectation of privacy, this conclusory assertion does not magically transform their customers' transactional information into their own. Moreover, Local Law 146's reporting requirements do not constitute an "administrative search" that requires pre-compliance review before a neutral arbiter.  Even if they did, the instant action provides such review and, thus, the Fourth Amendment and Article I, Section 12 are satisfied.

Second, Plaintiffs' claims that Local Law 146 is preempted on its face by the federal Stored Communications Act ("SCA") are similarly flawed.  Local Law 146 requires that booking services obtain their hosts' consent for the disclosures.  Pursuant to Section 2703(c) of the SCA, a covered provider may disclose subscriber information to the Government when the Government has a subscriber's consent.  Accordingly, the consent provision set forth in Local Law 146 is consistent with the SCA.  Plaintiffs' attempt to evade the plain application of the SCA by arguing that such consent is coerced, and further, that the City must directly obtain the consent from their hosts, is misguided.  Plaintiffs fail to submit any evidence supporting their conclusory assertion that all of their hosts would feel coerced into consenting to the disclosures. Indeed, Plaintiffs' own privacy policies already provide that their hosts and guests agree to the disclosure of their personal information to the Government as required by applicable law. Presumably, Plaintiffs are not conceding that they have coerced consent from their customers. Further, both the plain meaning and the legislative history of the SCA make clear that the City

need not directly obtain a host's consent.  In any event, Plaintiffs' argument is absurd as it is premised on the incongruent assumption that the City already has in its possession contact information for hosts, even though Local Law 146 seeks disclosure of that same information.

Finally, Plaintiffs' compelled speech claims under the First Amendment to the United States Constitution and Article I, Section 8 of the New York State Constitution are baseless.  Plaintiffs' existing privacy policies already satisfy the consent provision set forth in Local Law 146.  Moreover, Local Law 146 compels conduct (*i.e.,* obtain consent), not speech, and thus, the Free Speech Clauses are not implicated.  Finally, even if Local Law 146 compels speech (which it does not), it implicates commercial speech and advances the City's laudable goals of reducing illegal transient use, preserving permanent housing, and ensuring public safety. Therefore, it does not run afoul of the First Amendment or Article I, Section 8.

Based on the foregoing, Plaintiffs cannot establish a likelihood of success on the merits of any of their claims, nor can they establish the required irreparable harm.  Therefore, their motions for a preliminary injunction must be denied.

## STATEMENT OF FACTS

### A.        The City's Regulation of Transient Uses of Permanent Residences

The City continually receives complaints about the illegal conversion of permanent residences into short-term rentals.  Klossner Decl. ¶ 10.  Such illegal activity (i) poses significant health and safety risks (as the rented units typically do not comply with the heightened New York City Fire Code and New York City Building Code ("Building Code") requirements applicable to legal transient occupancies), (ii) reduces the availability of permanent housing, (iii) drives up rents, and (iv) adversely impacts the residential character of many neighborhoods and buildings throughout the City.  Id. ¶¶ 3 n.1, 9, 12, 22, 40-41.  Numerous reports have documented these harmful effects to the City and its residents.  Id. ¶¶ 19-23.

To regulate the adverse impacts of short-term rentals, in 2010, the New York State Legislature ("Legislature") enacted a law prohibiting the short-term rental of entire multiple dwelling units occupied for permanent residence purposes.  Klossner Decl. ¶ 11; see also Multiple Dwelling Law ("MDL") § 4(8).  New York City local law also prohibits short-term rentals of entire multiple dwelling units and one- and two-family dwelling units occupied for permanent residence purposes.[3]  See New York City Admin. Code ("Admin. Code") §§ 28-210.3, 28-118.3.2, 27-2004, 27-265; Building Code §§ 310.1.2, 310.2; Klossner Decl. ¶ 13.  In 2016, the Legislature took further action and enacted MDL § 121 and Admin. Code § 27-287.1 to prohibit the advertising of occupancies or uses that violate MDL § 4(8).  Klossner Decl. ¶ 15.

**B.      Local Law 146**

On June 26, 2018, numerous individuals and community organizations testified at a public hearing before the City Council's Committee on Housing & Buildings ("Committee") about the devastating impact of illegal transient uses on public safety and the availability of housing in the City.  Klossner Decl. ¶¶ 26-27; Ex. H.  On July 18, 2018, the Committee held another hearing and issued a report, stating that Introduction No. 981-A ("Intro. 981-A"), the legislation that would become Local Law 146, was proposed "[t]o further address the adverse effect, well-documented by a number of reports issued and studies conducted by both governmental and non-governmental organizations, resulting from conversion of permanent housing to rentals under 30 days."  Id., Ex. G, at 3.  Thereafter, on July 18, 2018, the City Council approved, by a vote of 45-0, Intro. 981-A, which was then signed into law by the Mayor on August 6, 2018.  Id. ¶¶ 5, 24.  Local Law 146 will take effect on February 2, 2019.  Id. ¶ 5.

---

[3] While the rental of an entire dwelling unit for less than thirty days is prohibited, lawful occupants may rent a part of a dwelling unit for less than thirty days to a maximum of two paying guests, including lawful boarders, roomers or lodgers, as long as they all "maintain a common household" in the same dwelling unit.  Admin. Code § 27-2004.

Specifically, Local Law 146 requires "booking services,"[4] such as Airbnb and HomeAway, to periodically submit to the Mayor's Office of Special Enforcement ("OSE") a "report of transactions" on short-term rentals for which they receive fees.  Admin. Code. § 26-2102(a); see also Klossner Decl. ¶ 7 (identifying the subscriber information to be included in such report).[5]  Prior to its submission, the booking service must "obtain, from each host using such booking service . . . lawful consent to provide the information described in" Admin. Code. § 26-2102(a) to OSE.  Admin. Code. § 26-2102(b).  Failure to submit the report can result in a civil penalty, which may be recovered in a civil proceeding.  Id. § 26-2104.

The transactional information obtained pursuant to the disclosure requirement set forth in Local Law 146 will allow the City to identify: (i) the most-commercialized locations and operators; (ii) buildings saturated with illegal short-term rental listings or egregious safety hazards; (iii) citywide patterns and trends; (iv) the appropriate civil penalty to be imposed for failure to comply with Local Law 146; and (v) the amount of revenue a booking service generates from illegal short-term rentals.  Klossner Decl. ¶¶ 28, 32-33.  Also, this information will enhance OSE's investigative capabilities and provide it with additional tools needed to prioritize enforcement and to combat increasing illegal and unsafe transient use. Id. ¶ 17.

## C.      Plaintiffs' Platforms

Plaintiffs provide online platforms that allow hosts to offer accommodations for rental and for guests to book those accommodations.  See Countryman Decl. ¶ 3; Furlong Decl. ¶ 4.  When an individual accesses or uses Plaintiffs' platforms, he or she accepts Plaintiffs' terms

---

[4] A "booking service" is a "person who . . . (1) [p]rovides one or more online, computer or application-based platforms that individually or collectively can be used to (i) list or advertise offers for short-term rentals, and (ii) either accept such offers, or reserve or pay for such rentals; and (2) [c]harges, collects or receives a fee for the use of such a platform or for provision of any service in connection with a short-term rental."  Admin. Code § 26-2101.

[5] The information "shall be available for public review only to the extent required by federal, state and local law."  Admin. Code. § 26-2105(a).   As required by Local Law 146, "OSE will undertake rulemaking to assist in effectuating the law," including to "address retention and disposal of information obtained."  Klossner Decl. ¶ 38.

of service and privacy policies.  Countryman Decl., Ex. A, p. 1, 3; Furlong Decl., Ex. A, p. 1.

Plaintiffs both reserve their right to modify these terms and policies at any time. Countryman

Decl., Ex. A, p. 10 § 3; Furlong Decl., Ex. A, p. 16 § 2.2.  Both Airbnb and HomeAway's

privacy policies provide that their customers' personal information may be disclosed to others as

required by applicable law. See Countryman Decl., Ex. B, p. 16 § 3.5; Furlong Decl., Ex. B, p. 3.

## ARGUMENT

A preliminary injunction "is an extraordinary remedy that should not be granted

as a routine matter." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990).  As

such, Plaintiffs must demonstrate: "(i) that [they are] likely to suffer irreparable injury if the

injunction is not granted, and (ii) either (a) a likelihood of success on the merits of [their] claim,

or (b) the existence of serious questions going to the merits of [their] claim and a balance of the

hardships tipping decidedly in [their] favor." Beal v. Stern, 184 F.3d 117, 122 (2d Cir. 1999).

"[W]here [the] preliminary injunction is sought against government action taken in the public

interest pursuant to a statutory or regulatory scheme," such as here, "a 'likelihood of success'

must be shown." Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d

Cir. 1999).  "This higher standard reflects judicial deference toward 'legislation or regulations

developed through presumptively reasoned democratic processes.'" Id. (quoting Able v. United

States, 44 F.3d 128, 131 (2d Cir. 1995) (per curiam)).

## POINT I

### PLAINTIFFS HAVE NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS.

Plaintiffs assert facial constitutional challenges to Local Law 146.  Yet,

government enactments are presumed to be constitutional. Bush v. Vera, 517 U.S. 952, 992

(1996).  "A facial challenge to a legislative [a]ct is, of course, the most difficult challenge to

-6-

mount successfully, since the challenger must establish that no set of circumstances exists under which the [a]ct would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987).  For the reasons set forth below, Plaintiffs have failed to meet their burden of establishing a likelihood of success on the merits of their facial constitutional challenges to Local Law 146.  Accordingly, their request to have Local Law 146 preliminarily enjoined must be denied.[6]

### A.       Plaintiffs Cannot Show Likelihood of Success on Fourth Amendment Claims.

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST., amend. IV.  Here, Plaintiffs allege that Local Law 146 violates their hosts' right to privacy, as well as their own, under the Fourth Amendment.  Plaintiffs are wrong on both fronts, and thus, cannot establish a likelihood of success on the merits.

### 1.       Plaintiffs' Fourth Amendment Claims Asserted on Behalf of Their Hosts Fail as a Matter of Law.

Plaintiffs' Fourth Amendment claims asserted on behalf of their customers fail because: (i) Plaintiffs lack standing to assert such claims; (ii) Plaintiffs' hosts lack a reasonable expectation of privacy in the short-term rental transactional records to be disclosed pursuant to Local Law 146; and (iii) Plaintiffs' hosts have already consented to the disclosure.

#### a.       *Plaintiffs Lack Standing to Assert Fourth Amendment Claims on Behalf of Their Hosts.*

The question of standing is "especially rigorous" when a court has to decide whether governmental action is unconstitutional.  Raines v. Byrd, 521 U.S. 811, 819-820 (1997).

---

[6] When considering facial challenges to legislative enactments, courts must also "consider any limiting construction that a state court or enforcement agency has proffered."  Ward v. Rock Against Racism, 491 U.S. 781, 795-96 (1989) (quoting Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, n.5 (1982)).  Local Law 146 provides that the head of OSE "may take such measures as are necessary for its implementation, including the promulgation of rules."  See Local Law 146, § 2.  Moreover, Local Law 146 requires the promulgation of rules addressing, *inter alia*, the "retention and disposal of information obtained."  Admin. Code § 26-2105(b).  As the rules implementing Local Law 146 have not yet been promulgated, Plaintiffs' facial challenges are premature.

As a general rule, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."  Powers v. Ohio, 499 U.S. 400, 410 (1991).  This principle especially holds true in the context of the Fourth Amendment, which involves "personal rights which, like some other constitutional rights, may not be vicariously asserted."  Alderman v. United States, 394 U.S. 165, 174 (1969); see also Plumhoff v. Rickard, 134 S. Ct. 2012, 2022 (2014); Microsoft Corp. v. U.S. Dep't of Justice, 233 F. Supp. 3d 887, 914-15 (W.D. Wash. 2017) (Microsoft cannot vindicate customers' Fourth Amendment rights).

Courts have, however, recognized limited exceptions to this general rule, including "the right of litigants to bring actions on behalf of third parties."  Powers, 499 U.S. at 410-411.  Under the third-party standing doctrine, a litigant must satisfy three criteria: (i) "[t]he litigant must have suffered an 'injury in fact'"; (ii) "the litigant must have a close relation to the third party"; and (iii) "there must exist some hindrance to the third party's ability to protect his or her own interests.  Id. (internal citations omitted).  For the reasons set forth below in Point I(A)(2), Plaintiffs fail to establish that they will personally suffer a violation under the Fourth Amendment if Local Law 146 is implemented.  Moreover, even if one were to assume that Plaintiffs have suffered an "injury in fact," and further, that they are considered to have a "close relation" to their hosts under the third-party doctrine,[7] Plaintiffs still fail to show that their hosts are hindered from asserting their own interests or rights with regard to Local Law 146.

First, HomeAway argues that its hosts would face "considerable practical barriers" suing in their own right because of the "economic burdens" in litigating an action. HomeAway Memo. at 18.  Not only has it failed to present a declaration from any host about alleged economic burdens, it has failed to account for the fact that, in an action brought under 42

---

[7] But  see  City & Cty. of S.F. v. HomeAway.com, Inc., 21 Cal. App. 5th 1116, 1132 (Cal. Ct. App. 2018) (HomeAway failed to demonstrate that it could assert the constitutional rights of its subscribers).

U.S.C. § 1983, attorneys' fees may be awarded.  42 U.S.C. § 1988(b).[8]  Second, HomeAway's claim that its hosts could suffer "retribution" from the City should they assert their own rights is nothing more than a scurrilous attack that should be disregarded.  HomeAway Memo. at 18.

In sum, Plaintiffs lack third-party standing to assert Fourth Amendment claims on behalf of their hosts.  See, e.g., California Bankers Ass'n v. Shultz, 416 U.S. 21, 69 (1974) (finding "that the California Bankers Association or the Security National Bank can[not] vicariously assert . . . Fourth Amendment claims on behalf of bank customers in general").

b. *Plaintiffs' Hosts Lack a Reasonable Expectation of Privacy in the Requested Transactional Records.*

Assuming *arguendo* that Plaintiffs have standing to assert a Fourth Amendment claim on behalf of their hosts, such claim fails because Plaintiffs' hosts lack a reasonable expectation of privacy in the transactional records implicated by Local Law 146.  The Fourth Amendment prohibits only unreasonable searches and seizures.  Horton v. California, 496 U.S. 128, 133 (1990).  Thus, in order to show an infringement of Fourth Amendment rights, a litigant must establish that "a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' . . . has been invaded by government action."  Smith v. Maryland, 442 U.S. 735, 740 (1979).  The inquiry embraces two questions.  "The first is whether the individual, by his conduct has 'exhibited an actual (subjective) expectation of privacy'" (*i.e.*, whether he "has shown that 'he seeks to preserve [something] as private'").  United States v. Knotts, 460 U.S. 276, 281 (1983) (quoting Katz v. United States, 389 U.S. 347, 351, 361 (1967)).  "The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'"  Id. (quoting Katz, 389 U.S. at 363 (Harlan, J., concurring)).  Where no legitimate

---

[8] Moreover, contrary to HomeAway's assertion, there are cases where short-term rental hosts generate considerable sums in revenue, and would clearly have the economic means to pursue litigation.  See, e.g., Klossner Decl. ¶ 33 (investigation "showed that illegal hotel operators generated approximately $1 million dollars in revenue").

expectation of privacy exists, there is no "search" within the meaning of the Fourth Amendment. United States v. Knotts, 460 U.S. 276, 285 (1983).

"[T]he Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." United States v. Miller, 425 U.S. 435, 443 (1976) (bank depositors have no legitimate expectation of privacy in deposit information). Simply put, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." Smith, 442 U.S. at 743-44 (the use of a pen register did not constitute a "search" because individuals lack a legitimate expectation of privacy in the telephone numbers they dial); see also United States v. Ulbricht, 858 F.3d 71, 97 (2d Cir. 2017) (the collection of IP address information, which is revealed by internet users to third parties, did not violate the Fourth Amendment); City & Cty. of S.F., 21 Cal. App. 5th at 1132 (HomeAway's users lacked a legitimate expectation of privacy in the records requested by a subpoena, including addresses and hosts' contact and identifying information). By using the Airbnb and HomeAway platforms, hosts voluntarily disclose to Plaintiffs their personal information. Furthermore, Plaintiffs' hosts voluntarily consent—through Plaintiffs' terms of service and privacy policies—to the disclosure of their personal information to third-parties, including the Government. See, e.g., Countryman Decl., Ex. B, p. 18 § 3.6 ("Airbnb and Airbnb Payments will need to share your information, including personal information, in order to ensure the adequate performance of our contract with you."); Furlong Decl., Ex. B, p. 3 ("We may disclose your data to enforce our policies, or where permitted (or believe in good faith that we are required) to do so by applicable law . . . or to

protect our property, people and other rights and requests."). Thus, hosts lack a reasonable expectation of privacy in information they voluntarily give to Plaintiffs.

In arguing that Local Law 146 violates the constitutional rights of its hosts, Plaintiff HomeAway cites to United States v. Warshak, 631 F.3d 266 (6th Cir. 2010), for the proposition that "individuals have a reasonable expectation of privacy in electronic communications." HomeAway's Memo. at 16-17. However, Warshak is inapposite. Whereas the government sought to compel internet service providers ("ISPs") to disclose private electronic communications in Warshak, 631 F.3d at 281-82, Local Law 146 does not require the disclosure of electronic communications, such as emails; instead, it merely requires limited transactional records of Plaintiffs' hosts.[9] The facts at issue here show that Miller, not Warshak, controls. HomeAway also relies on Carpenter v. United States, 138 S. Ct. 2206, 2220 (2018), to argue that Local Law 146 "'implicates privacy concerns far beyond those considered' in cases involving more innocuous information." HomeAway Memo. at 17. Carpenter is also distinguishable. In holding that individuals have a reasonable expectation of privacy in records of their physical movements as captured through historical cell-site location information ("CSLI"), the Court reasoned that, "while the third-party doctrine applies to telephone numbers and bank records," CSLI records would "provide[] an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." Carpenter, 138 S. Ct. at 2216-17 (internal quotations omitted). Unlike CSLI records, the short-term rental transactional records at issue

---

[9] In Warshak, the Sixth Circuit also found that the third-party doctrine established in Miller did not apply because (i) "Miller involved simple business records, as opposed to the potentially unlimited variety of confidential communications at issue here," (ii) "the bank depositor in Miller conveyed information to the bank so that the bank could put the information to use in the ordinary course of business," and (iii) the ISP at issue "was an intermediary, not the intended recipient of the emails." Warshak, 631 F.3d at 288.

here would not reveal every movement made by Plaintiffs' hosts, but rather consist of the type of information implicated in Miller, Smith, and City & Cty. of S.F.

        c.     *Plaintiffs' Hosts Have Already Consented to Disclosure.*

A warrantless search is not unreasonable if it falls under "specifically established and well-delineated exceptions."  Mincey v. Arizona, 437 U.S. 385, 390 (1978).  "[O]ne of the specifically established exceptions . . . is a search that is conducted pursuant to consent."  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (internal citations omitted).  Such consent must be "freely and voluntarily given," Bumper v. North Carolina, 391 U.S. 543, 548 (1968), and "need not be expressed in a particular form[,] but 'can be found from an individual's words, acts or conduct,'" United States v. Deutsch, 987 F.2d 878, 883 (2d Cir. 1993) (quoting Krause v. Penny, 837 F.2d 595, 597 (2d Cir. 1988)).

Plaintiffs argue that Local Law 146's consent provision does not defeat their hosts' Fourth Amendment claims because such consent is not voluntary.  HomeAway Memo. at 17-18; Airbnb Memo. at 18.  This argument fails for several reasons.  First, "the question [of] whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."  Bustamonte, 412 U.S. at 227.  Here, Plaintiffs have provided no evidence to support their assertion that all of their hosts would feel coerced to consent to the disclosure of the information set forth in Local Law 146, and therefore, their facial challenge fails.  Second, Local Law 146 does not dictate the manner in which booking services must obtain a host's consent to the disclosure, nor does it "force" hosts to consent to the disclosure.  If a host does not wish to have his or her information disclosed to the City, he or she can simply refuse to consent.[10]

---

[10] As such, the "constitutional conditions" doctrine cited by HomeAway does not apply.  See HomeAway Memo. at 12.  The City does not control access to the internet, nor does it control access to these Plaintiffs' specific

Whether the booking service opts to revoke or suspend such host's access to the booking service platform does not affect the question of whether the user's consent is voluntary.

Last, but not least, the broad language in Plaintiffs' own privacy policies—which Plaintiffs' hosts and guests must accept to use the respective platforms—shows that Plaintiffs' hosts have already consented to the type of disclosure contemplated by Local Law 146. Section 3.5 of the Airbnb privacy policy states, in relevant part, as follows:

> **Airbnb and Airbnb Payments may disclose your information, including personal information, to** courts, law enforcement or **governmental authorities**, or authorized third parties, **if and to the extent we are required or permitted to do so by law**, or if such disclosure is reasonably necessary: (i) to comply with our legal obligation, (ii) to comply with legal process and to respond to claims asserted against Airbnb . . . ."

Countryman Decl., Ex. B., p. 16 § 3.5 (emphasis added). Similarly, HomeAway's privacy policy states, in relevant part, as follows:

> **We may disclose your personal data** to enforce our policies, or **where we are permitted (or believe in good faith that we are required) to do so by applicable law, such as in response to a request by a** law enforcement or **governmental authority**, or in connection with actual or proposed litigation, or to protect our property, people and other rights or interests.

Furlong Decl., Ex. B, p. 3 (emphasis added). HomeAway further emphasizes the non-confidential nature of communications and user content when it explicitly notes in bold letters in its terms of service the following:

> **YOU ACKNOWLEDGE AND AGREE THAT ANY TRANSMISSION TO AND FROM THIS SITE IS NOT CONFIDENTIAL AND YOUR COMMUNICATIONS OR**

---

websites—Plaintiffs do. In addition, hosts have the choice to consent or not consent to the disclosures. Therefore, as the City does not confer the privilege of "doing business on the internet," as Plaintiff HomeAway falsely contends, the doctrine is inapplicable. Contra, Frost v. R.R. Comm'n, 271 U.S. 583, 599 (1926) (privilege of using public highways cannot be unconstitutionally conditioned by government). And in any event, there can be no waiver of any federal statutory or constitutional right because Plaintiffs' hosts lack a reasonable expectation of privacy in the records to be disclosed under Local Law 146.

**USER-CONTRIBUTED CONTENT MAY BE READ OR INTERCEPTED BY OTHERS.**

Furlong Decl., Ex. A, p. 12 § 17.  Accordingly, Plaintiffs' Fourth Amendment claims, asserted on behalf of their hosts, are utterly baseless and must necessarily fail.

### 2. Plaintiffs' Own Fourth Amendment Claims Fail as a Matter of Law.

Plaintiffs cannot show a likelihood of success on the merits of their own Fourth Amendment claims because: (i) Plaintiffs do not have a reasonable expectation of privacy in their hosts' transactional records; and (ii) even if they did, Plaintiffs are receiving pre-compliance review.

> ### a. *Plaintiffs Lack a Reasonable Expectation of Privacy in their Hosts' Short-Term Rental Transactional Records.*

Plaintiffs argue that Local Law 146 is unconstitutional under the Fourth Amendment because it requires them to disclose "confidential business records" without legal process or pre-compliance review.  HomeAway Memo. at 15; Airbnb Memo. at 15-16.  In support, Plaintiffs cite City of Los Angeles v. Patel, 135 S. Ct. 2443 (2015).  Plaintiffs' argument fails because (i) Plaintiffs do not have a reasonable expectation of privacy in the transactional records at issue, and (ii) the ordinance in Patel is distinguishable from Local Law 146.

Plaintiffs cannot argue in good faith that they have a reasonable expectation of privacy in their hosts' transactional records.  First, as confirmed by Plaintiffs' own terms of service, information contained in these transactional records belongs to Plaintiffs' customers, not the companies.  See, e.g., Countryman Decl., Ex. A, p. 6-7 § 1.2 ("As the provider of the Airbnb Platform, Airbnb does not own [or] . . . control . . . any Listings or Host Services . . . ."); id. p. 13 § 5.5 ("Airbnb does not claim any ownership rights in any Member Content . . . .").[11]  Second, Plaintiffs routinely disclose their customers' personal information to third-parties, including

---

[11] HomeAway and Airbnb have both previously argued that they are immune from liability under section 230 of the Communications Decency Act because they cannot be treated as the publisher or speaker of any information provided by their users.  See, e.g., Homeaway.com, In  c. v. City of Portland, No. 3:17-cv-00091, ECF No. 36, at *6 (D. Or. Mar. 27, 2011); Airbnb, Inc. v. City & Cty. of S.F., 217 F. Supp. 3d 1066, 1072 (N.D. Cal. 2016).

governmental entities, based on their customers' consent.  See, e.g., Countryman Decl., Ex. B, p. 16 § 3.5; Furlong Decl., Ex. B, p. 3.  Third, these so-called "business records" are, in fact, transactional records that describe or identify Plaintiffs' hosts, their listings, and their short-term rental transactions.  Clearly, Plaintiffs would not be turning over this information to the Government, or anyone else, if they believed it constituted their own private, commercially sensitive business records, as opposed to hosts' short-term rental transactional records.

While Plaintiffs argue that, like the statute in Patel, Local Law 146 "violates the Fourth Amendment by requiring [booking services] to turn over [their] confidential business records without legal process," this argument is misguided.  HomeAway Memo. at 15; Airbnb Memo. at 15-16.  In Patel, the City of Los Angeles enacted a statute that required hotel operators to record and retain for ninety days information about their guests, including:

> the guest's name and address; the number of people in each guest's party; the make, model, and license plate number of any guest's vehicle parked on hotel property; the guest's date and time of arrival and scheduled departure date; the room number assigned to the guest; the rate charged and amount collected for the room; and the method of payment.

Patel, 135 S. Ct. at 2447-48.  These records were to "be made available to any officer of the Los Angeles Police Department for inspection, provided that whenever possible, the inspection shall be conducted at a time and in a manner that minimizes any interference with the operation of the business."  Id. (internal citations and quotations omitted).  A hotel operator's failure to comply with such inspection requirement would result in criminal penalties.  Id.

Local Law 146 is distinguishable in several respects.  First, unlike the statute at issue in Patel, which required hotels to submit to on-demand, in-person and indefinite *inspections* of their commercial premises and business records, Local Law 146 provides for scheduled off-site *disclosures* of a "report of transactions" setting forth certain host short-term

rental information.  See Admin. Code § 26-2102(a).  Second, whereas hotels were subject to criminal penalties in Patel, booking services are only subject to civil penalties to "be recovered in a proceeding before the office of administrative trials and hearings or a court of competent jurisdiction" if they fail to comply with Local Law 146.  Id. § 26-2104.  Third, unlike the statute in Patel, Local Law 146 requires that booking services obtain their hosts' consent before making any disclosures to the City.  Admin. Code § 26-2102(b).  Lastly, the services provided by hotel operators are wholly distinguishable from those provided by booking services.  Whereas hotels serve as providers of accommodations, and are thus direct parties to the rental transactions, booking services act as intermediaries between hosts and guests.  See Countryman Decl., Ex. A, p. 6 § 1.2 ("Airbnb is not and does not become a party to or other participant in any contractual relationship between Members, nor is Airbnb a real estate broker or insurer."); Furlong Decl., Ex. A, p. 2 ("[HomeAway] [is] not a party to any rental or other agreement between users.").

The Supreme Court's holding in Patel (i.e., that the required inspections constituted unreasonable searches because hotels did not have an opportunity for pre-compliance review before a neutral decisionmaker) was also based on the fact that the statute imposed criminal penalties and that "the ordinance create[d] an intolerable risk that searches authorized by it will exceed statutory limits, or be used as a pretext to harass hotel operators and their guests."  Patel, 135 S. Ct. at 2452-53.  As none of those circumstances is present here, the disclosure requirement set forth in Local Law 146 does not implicate Plaintiffs' Fourth Amendment rights and, thus, pre-compliance review is not required.

> b.    *Assuming Arguendo that Patel Does Apply, the Instant Action Constitutes Pre-Compliance Review.*

"[A]bsent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an

opportunity to obtain precompliance review before a neutral decisionmaker." <u>Patel</u>, 135 S. Ct. at 2452.  "While the Court has never attempted to prescribe the exact form an opportunity for precompliance review must take," <u>id.</u>, the party must have an opportunity to "obtain judicial review of the reasonableness of the demand <u>prior to</u> suffering penalties for refusing to comply," <u>See v. Seattle</u>, 387 U.S. 541, 545 (1967) (emphasis added).  The instant action affords Plaintiffs the opportunity for judicial review of Local Law 146's disclosure requirement prior to its effective date.  Because it prescribes the time, subject and manner of the disclosures with definiteness, the Court has a full opportunity to review the disclosure requirement in the instant action.  Accordingly, Plaintiffs' Fourth Amendment claims must necessarily fail.

**B.      Plaintiffs' Article I, Section 12 Claims Fail.**

Like the Fourth Amendment, Article I, Section 12 of the New York State Constitution protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."  N.Y. STATE CONST., Art. I, § 12.  For the same reasons noted in Point I(A), Plaintiffs' claims under Article I, Section 12 fail.  Plaintiffs simply do not have a reasonable expectation of privacy in the short-term rental transactional records of their hosts.  Thus, contrary to Plaintiffs' contentions, the "narrowly and precisely tailored" standard set forth by the New York Court of Appeals applicable to administrative searches does not apply.  <u>See</u> Airbnb Memo. at 21; HomeAway Memo. at 19.

Assuming *arguendo*, though, that Local Law 146 is considered an "administrative search" (which Defendant submits it is not), Local Law 146 meets the "narrowly and precisely tailored" standard.  While almost every booking service makes some amount of information public to internet users, such publicly available information by itself is of limited investigative value.  Klossner Decl. ¶¶ 29-30 (stating that, in most cases, listings on Airbnb and HomeAway conceal addresses and even names of the streets).  Moreover, users often provide fictitious host

identities and false addresses to thwart enforcement efforts.  Id. ¶ 31.  Thus, Local Law 146 provides the City with the necessary tools to effectively enforce the laws prohibiting short-term rentals of permanent residences.  Further, in doing so, Local Law 146 categorically exempts a large percentage of short-term rental listings, including those for which no fees are collected by the booking services, as well as those involving short-term rentals identified in a list of approved multiple dwellings that are permitted by law to be occupied transiently (i.e., "Class B" multiple dwellings).  Id. ¶ 7 n.3; Admin. Code § 26-2103.  Accordingly, Plaintiffs cannot show a likelihood of success on the merits of their Article I, Section 12 claims.

**C.      Local Law 146 Is Not Preempted by the SCA.**

Plaintiffs contend that Local Law 146 is in conflict with, and is thus preempted by, the SCA.  HomeAway Memo. at 8-14; Airbnb Memo. at 22-28.  Where Congress has not expressly preempted state law or "entirely displaced state action in the area, state law is preempted to the extent that it actually conflicts with federal law."  Envtl. Encapsulating Corp. v. New York, 855 F.2d 48, 53 (2d Cir. 1988).  In considering a preemption claim, "the purpose of Congress is the ultimate touchstone," Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747 (1985), and preemption may not be found "unless that was the clear and manifest purpose of Congress," Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977).  For the reasons set forth below, Plaintiffs cannot establish a likelihood of success on the merits of their SCA claims.

**1.      The SCA Does Not Protect Communications or Records That Are Readily Accessible to the Public.**

The SCA was enacted by Congress in 1986 as Title II of the Electronic Communications Privacy Act of 1986 ("ECPA").  See Pub. L. No. 99-508, 100 Stat. 1848 (1986) (codified as amended at 18 U.S.C. §§ 2701-11).  It "protect[s] privacy interests in personal and proprietary information, while protecting the Government's legitimate law enforcement needs."

-18-

Selvin Decl., Ex. B (S. Rep. No. 99-541) at 3; see also Selvin Decl., Ex. C (H. Rep. No. 99-467) at 19.  The SCA does not, however, protect a communication or subscriber information that is readily accessible to the public.  18 U.S.C. § 2511(2)(g)(i); see also Selvin Decl., Ex. B at 39.

Local Law 146 requires the disclosure of certain transactional records that are readily accessible to the public and, thus, not protected by the SCA.  See Snow v. Direct TV, Inc., 450 F.3d 1314, 1321 (11th Cir. 2006) (information accessible to the general public is not protected under SCA).  Booking service platforms, including HomeAway and Airbnb, make certain information publicly available without any username or password.  Klossner Decl. ¶ 29. In the case of Airbnb, the following records to be disclosed pursuant to Local Law 146 are publically available for most, if not all, of its New York City listings: (i) the borough or county where the short-term rental accommodation is located (Admin. Code § 26-2102(a)(1)); (ii) the host's individualized name and uniform resource locator ("URL") (Admin. Code § 26-2102(a)(2)); (iii) the individualized name and the URL of the short-term rental advertisement or listing (Admin. Code § 26-2102(a)(3)); and (iv) whether the short-term rental accommodation was for the entire unit or part of it (Admin. Code § 26-2102(a)(4)).[12]  Id.  As such,  this public information is exempted from the SCA.[13]

## 2. Local Law 146's Disclosure Provision Is Consistent with the SCA.

Sections 2702 and 2703 of the SCA govern the disclosure of subscriber communications and records by providers of a remote computing service ("RCS") or electronic

---

[12] While HomeAway alleges that it does not collect information about whether the accommodation was for the entire unit or part of it, Furlong Decl. ¶ 21, Local Law 146 expressly states that "where such information is unavailable to the booking service," it need only explain "why such information is unavailable," Admin. Code § 26-2102(a).

[13] Furthermore, bank and electronic fund transfer records are not the type of information that Congress sought to protect under the SCA.  18 U.S.C. § 2510(12)(D); HomeAway.com, Inc. v. City of Portland, No. 91-2017, 2017 U.S. Dist. LEXIS 74880, at *14-15 (D. Or. May 11, 2017) ("[Bank record] information is . . . not the type of third-party electronic communications protected by the SCA."); see also New Yorkers Making Ends Meet in the Sharing Economy v. Airbnb, Inc., Index No. 158526/14, Doc. No. 24, at *7 (Sup. Ct. N.Y. Cty.) (where Airbnb argued that "the SCA does not apply to Airbnb's transactional records any more than it would apply to a hotel service that takes bookings online").  Thus, the records described in Admin. Code § 26-2102(a)(6)-(7) are also exempted.

communication service ("ECS") (collectively, "covered service providers"). <u>See</u> 18 U.S.C. §§ 2702-03.   Section 2702, entitled "[v]oluntary disclosure of customer communications or records," prohibits covered service providers from disclosing "a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity," except "as otherwise authorized in section 2703 . . . [or] with the lawful consent of the customer or subscriber . . . ."[14]   <u>Id.</u> § 2702(a),(c).   Section 2703, entitled "[r]equired disclosure of customer communications or records," provides that "[a] governmental entity may require a [covered service] provider . . . to disclose a record or other information pertaining to a subscriber to or customer of such service"—including the name, address, telephone numbers, the length and types of services utilized, subscriber number or identity, and means and source of payment for such service—"when the governmental entity," among other things, "has the consent of the subscriber or customer to such disclosure."[15]   <u>Id.</u> § 2703(c)(1)(C).

   a.   *Local Law 146 Is Not Facially Preempted Under the SCA Because Not All "Booking Services" Are Covered Service Providers.*

   As a preliminary matter, the Court must determine whether "booking services," as defined in Admin. Code § 26-2101, necessarily are providers of RCS or ECS to the public.  The answer to this question depends on "'the provider's role with respect to a particular copy of a particular communication, rather than the provider's status in the abstract.'"   <u>In re Application of the United States for an Order Pursuant to 18 U.S.C. 2705(b)</u>, 289 F. Supp. 3d 201, 208 (D.D.C. 2018) (quoting Orin S. Kerr, <u>A User's Guide to the Stored Communications Act, and a</u>

---

[14] In light of Plaintiffs' privacy policies, which provide that Plaintiffs' customers have consented to the disclosure of their personal information to third-parties, including governmental entities, <u>see</u> Countryman Decl. Ex. B, p. 16 § 3.5, Furlong Decl. Ex. B, p. 3, section 2702 of the SCA would permit Plaintiffs to *voluntarily* disclose the type of transactional records required pursuant to Local Law 146.

[15] Regardless of whether the disclosure is made under § 2702 or § 2703, a covered service provider has immunity for such disclosure under the SCA as long as they have consent.  <u>See</u> 18 U.S.C. § 2703(e) (no cause of action against covered service providers "for providing information, facilities, or assistance in accordance with the terms of a . . . statutory authorization"); 18 U.S.C. § 2707(e) ("good faith reliance on . . . a legislative authorization, or a statutory authorization" is a complete defense to any civil or criminal action).

Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1215 (2004)).  On its face, the

definition of "booking service" does not necessarily implicate a covered service provider.  A

booking service must simply allow for the listing or advertisement of short-term rentals and the

completion of rental transactions for a fee, and does not necessarily need to provide "computer

storage or processing services" or "the ability to send or receive wire or electronic

communications" (*e.g.*, through internal messaging systems).  18 U.S.C. §§ 2510(15), 2711(1)-

(2).  Since Plaintiffs cannot establish that every "booking service" subject to Local Law 146 is an

RCS or ECS provider covered by the SCA, their facial challenge to Local Law 146 must fail.[16]

> b.     *Local Law 146 Provides for Host Consent to Disclosure.*

Plaintiffs argue that Local Law 146 violates the SCA because it compels the

disclosure of SCA-protected information without a subpoena or other legal process.  HomeAway

Memo. at 9-11; Airbnb Memo. at 27-28 (citing Telecom. Regulatory Bd. v. CTIA - The Wireless

Assn., 752 F.3d 60, 61 (1st Cir. 2014); Homeaway.com, Inc. v. City of Portland, No. 3:17-cv-

00091, ECF No. 36 (D. Or. Mar. 27, 2011)).  While the statutes at issue in both cases involved

disclosures of basic subscriber information, neither conditioned such disclosure upon user

consent, as Local Law 146 does.  Plaintiffs further contend that Local Law 146's consent

provision "fails" because "it does not provide for record-specific consent."  HomeAway Memo.

at 14; Airbnb Memo. at 26.  Such contention is baseless.  The consent provision expressly states

that consent is sought in connection with the disclosure of the short-term rental transactional

---

[16] To the extent that this Court construes that Plaintiffs are also asserting an as-applied challenge, based on Plaintiffs' representations in their submitted fact declarations regarding how their platforms currently operate, the City does not contest the applicability of the SCA to these Plaintiffs for the purposes of these motions, and section 2703(c) of the SCA would govern.

records listed in Admin. Code § 26-2102(a).[17]   Admin. Code § 26-2102(b).   Accordingly, as

Local Law 146 provides for consent, it complies with section 2703(c) of the SCA.

> c.   *The SCA Does Not Require Governmental Entities to Obtain*
> *Consent to Disclosure Directly from the Subscriber.*

Plaintiffs argue that the consent provision set forth in Local Law 146 does not

satisfy the SCA because "the burden is on the governmental entity to obtain consent,"

HomeAway Memo. at 13, Airbnb Memo. at 25.   Yet, the plain meaning, purpose and legislative

history of the SCA does not support such a reading.   The Court must determine the meaning of

the phrase "when the governmental entity . . . has the consent of the subscriber or customer to

such disclosure'" and, specifically, the meaning of the term "has."   18 U.S.C. § 2703(c)(1)(C).

The Court's starting point "is the statute's plain meaning."   United States v. Dauray, 215 F.3d

257, 260 (2d Cir. 2000).   Where no definition is provided for a term, the Court must interpret the

term based on its "ordinary, common-sense meaning."   Dauray, 215 F.3d at 260 (citing Harris v.

Sullivan, 968 F.2d 263, 265 (2d Cir. 1992)).

The language at issue has an unambiguous meaning.   The ordinary meaning of the

term "has" connotes passively holding or maintaining something.   See, e.g., THE AMERICAN

HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 825 (3d ed. 1996) ("[T]o be in possession of

. . . [or] [t]o come into possession of.").   It does not imply an affirmative act like the term

"obtains" does.   See, e.g., id. 1250 ("[T]o succeed in gaining possession of as the result of

planning or endeavor.").   Based on the plain meaning of the statute, as long as a user consents to

the provider's disclosure of the subscriber information, the consent requirement of the SCA is

---

[17] Local Law 146 does not prescribe a particular method for obtaining consent.   See Admin. Code § 26-2102(b).
Even if a booking service fails to notify a user of the records to be disclosed, the consent would still be valid as the
user would have public notice of Local Law 146.   United States v. Amen, 831 F.2d 373, 379 (2d Cir. 1987) (Code of
Federal Regulations provided "public notice" of possibility of monitoring of prison telephones); see also
Countryman Decl., Ex. A, p. 3 ("Hosts alone are responsible for identifying, understanding, and complying with all
laws, rules and regulations . . . ."); Furlong Decl., Ex. A, p. 2 § 1 ("Users agree that they are responsible for, and
agree to abide by, all laws, rules and regulations applicable to their use of the Site . . . .").

satisfied.  Had Congress intended to impose an affirmative obligation on governmental entities to directly acquire consent from a user, it would have used the term "obtains," instead of "has."

Assuming *arguendo* that the language at issue is ambiguous, the purpose and legislative history of the SCA support the City's construction of the statute.  See Natural Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 98 (2d Cir. 2001) ("[Where] the plain meaning of a statute is susceptible to two or more reasonable meanings . . . a court may resort to the canons of statutory construction.").  The reports prepared by the committees of the United States Senate and House of Representatives are instructive.  Senate Committee Report No. 99-541 states that "[a] government entity which receives customer records pursuant to one of these four alternatives [including subscriber consent] is not required to provide notice to the subscriber or customer that it has requested or obtained this information." Selvin Decl., Ex. B at 39; Selvin Decl., Ex. C at 69; see also 18 U.S.C. § 2703(c)(3) ("A governmental entity receiving records or information under [section 2703(c)] is not required to provide notice to a subscriber or customer.").  Given that governmental entities need not provide notice to subscribers when obtaining 2703(c) records by way of consent, Plaintiffs' interpretation of the statute—in which they are claiming that the Government must directly obtain consent from their users—conflicts with Congressional intent: there would be no scenario where the Government could directly obtain a user's consent for disclosure and, at the same time, avoid having to notify the user.

Furthermore, in interpreting a statute, courts should avoid "absurd results" and "internal inconsistencies in the statute."  Natural Res. Def. Council, Inc., 268 F.3d at 98 (quoting United States v. Turkette, 452 U.S. 576, 580 (1981); Dauray, 215 F.3d at 264)).  Plaintiffs' interpretation of the statute would render section 2703(c)'s consent provision meaningless.  It assumes that a governmental entity compelling disclosure of subscriber information already has

the means to contact the subscriber (*e.g.*, name, address, telephone number, or e-mail address) for the purpose of requesting and obtaining his or her consent.  This interpretation is absurd considering that a governmental entity is seeking disclosure by the covered provider of that same type of information under section 2703(c).  Moreover, obtaining consent directly from every booking service user would simply be impossible, especially given that Plaintiff Airbnb, in particular, regularly objects to requests for subscriber information.  See Klossner Decl. ¶ 34.

In support of their interpretation, Plaintiffs' rely on Freedman v. Am. Online, Inc., 303 F. Supp. 2d 121 (D. Conn. 2004) which, as a preliminary matter, is not binding on this Court Moreover, such reliance is misguided, as Freedman is entirely distinguishable.  In Freedman, two police officers executed and sent a legally null warrant application to America Online, Inc. ("AOL") requesting records pertaining to an AOL subscriber.  Freedman, 303 F. Supp. 2d at 123. AOL responded to the police officers' application by faxing the requested subscriber information and a cover sheet that referenced 18 U.S.C. § 2703(c)(1)(C).  Id. at 128.  The police officers contended that the subscriber consented by virtue of the cover sheet's reference to section 2703(c)(1)(C).  Id.  However, the court found (i) that "at the time [the police officers] sought disclosure from AOL, there was no consent from Plaintiff," and (ii) that the police officers "never *sought* or obtained Plaintiff's consent."  Id. at 128-29 (emphasis added).  Here, in contrast, Local Law 146 expressly requires that hosts' consent be obtained prior to any disclosure.  See Admin. Code § 26-2102(b).  Accordingly, Local Law 146 satisfies the consent requirement set forth in section 2703(c)(1)(C) of the SCA.

### d.   *Local Law 146's Consent Provision Is Lawful and Does Not Compel or Coerce Consent from Plaintiffs' Hosts.*

As a preliminary matter, as set forth above in Point I(A)(1)(c), the consent provision set forth in Local Law 146 provides for lawful and valid consent.  Plaintiffs have

provided no evidence to support their conclusory assertion that all of their hosts would feel coerced to consent.   More importantly, Plaintiffs' hosts have already consented to such disclosure by virtue of their acceptance of Plaintiffs' privacy policies.   See Countryman Decl., Ex. B., p. 16 § 3.5; Furlong Decl., Ex. B, p. 3.

HomeAway cites to a number of cases for the proposition that "courts have rejected arguments by government entities that they may rely on 'consents' provided by customers to providers as part of their terms of service."   HomeAway Memo. at 13.   None of these cases, however, support HomeAway's contention.   In United States v. DiTomasso, 56 F. Supp. 3d 584, 597 (S.D.N.Y. 2014), the search involved e-mail and chat communications, and the court —contrary to HomeAway's contention—concluded "that a reasonable person familiar with AOL's policy would understand that by agreeing to the policy, he was consenting not just to monitoring by AOL as an ISP, but also to monitoring by AOL as a government agent."   As for People v. Pierre, 29 N.Y.S.3d 110, 114-15 (Sup. Ct. Kings Cty. 2016), the court merely noted that "[i]t [was] not clear exactly what Google users were agreeing to by accepting the terms of service, because its language was vague."[18]   Thus, Plaintiffs have advanced no reason for why the Court should disregard Plaintiffs' own terms of service and privacy policies in which Plaintiffs' users have already consented to the disclosures at issue.   See In re Yahoo Mail Litig., 7 F. Supp. 3d 1016, 1029 (N.D. Cal. 2014) (finding user's explicit consent to Yahoo's interception of emails based on terms of service); see also Rousset v. AT&T Inc., No. 14-0843, 2015 U.S. Dist. LEXIS 172113, at *24 (W.D. Tex. Dec. 28, 2015) (plaintiff "gave his effective consent to the monitoring and distribution of his data content by Yahoo" through Yahoo's terms

---

[18] HomeAway also references In re Application for Tel. Info. Needed for a Criminal Investigation, 119 F. Supp. 3d 1011 (N.D. Cal. 2015).  In that case, the court held that subscribers' acceptance of the privacy policies of Verizon and AT&T was insufficient to generate consent to a warrantless search of historical CSLI data because such data was collected by other cellular service providers.  Id. at 1036-39.  This is not the case here.

and conditions, and, thus, knowingly and voluntarily waived any constitutional rights or privacy

protections under the ECPA and the Fourth Amendment).

Moreover, the legislative history of the SCA supports that Local Law 146

provides for lawful and valid consent.  The House Committee Report No. 99-467 defines the

phrase "lawful consent," and states, in relevant part, as follows:

> . . . "[L]awful consent," in this context, need not take the form
> of a formal written document of consent.  A grant of consent
> electronically would protect the service provider from liability
> for disclosure under Section 2702.[19]    Under various
> circumstances, consent might be inferred to have arisen from a
> course of dealing between the service provider and the
> customer or subscriber . . . .  Consent may also flow from a
> user having had a reasonable basis for knowing that disclosure
> or use may be made with respect to a communication, and
> having taken action that evidences acquiescence to such
> disclosure or use-- e.g., continued use of such an electronic
> communication system. . . . If conditions governing disclosure
> or use are spelled out in the rules of an electronic
> communication service, and those rules are available to users in
> contracts for the provision of such services, it would be
> appropriate to imply consent on the part of a user to disclosures
> or uses consistent with those rules.

Selvin Decl., Ex. C at 66; see also Ajemian v. Yahoo!, Inc., 478 Mass. 169, 182 (2017) ("[H]ad

Congress intended lawful consent to mean only actual consent, it could have used language such

as 'actual consent' or 'express consent' rather than 'lawful consent.'").[20]

---

[19] While the House Committee discussed the definition of "lawful consent" in the context of section 2702 of the SCA, rules of statutory construction instruct that "identical words used in different parts of the same statute are generally presumed to have the same meaning." IBP, Inc. v. Alvarez, 546 U.S. 21, 34 (2005); see also United States v. Castleman, 572 U.S. 157, 174 (2014).  This especially holds true given that the House Committee failed to discuss the meaning of consent in the context of section 2703 of the SCA.

[20] The conceptually related anti-wiretapping statute, which was amended by the ECPA, see 18 U.S.C. §§ 2510 et seq., prohibits government interceptions of "a wire, oral, or electronic communication," except when it has the "prior consent" of "one of the parties to the communication."  18 U.S.C. § 2511(2)(c).  Courts have applied the "prior consent" exception in the same manner as those applying it in the context of the SCA.  See, e.g., Amen, 831 F.2d at 378-79 (finding implied consent to the interception of calls based on "public notice" and "actual notice").

Based on the foregoing, there is no question that Local Law 146's consent provision provides for lawful and valid consent, satisfying the criteria set forth under section 2703(c)(1)(C) of the SCA.  Accordingly, Plaintiffs' SCA preemption claims fail.

**D.      Local Law 146 Does Not Compel Speech in Violation of First Amendment.**

The First Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, states that "Congress shall make no law . . .  abridging the freedom of speech . . . ."  The Supreme Court has held that the Free Speech Clause "includes both the right to speak freely and the right to refrain from speaking at all."  Wooley v. Maynard, 430 U.S. 705, 714 (1977).  It is the right to refrain from speaking that Plaintiffs argue is violated by Local Law 146.[21]  According to Plaintiffs, the consent provision set forth in Local Law 146 (codified as Admin. Code § 26-2102(b)) requires them to communicate a message that they do not wish to convey and with which they disagree.  HomeAway Memo. at 20; Airbnb Memo. at 28-29.  They are wrong.  As explained below, the First Amendment is not implicated by the consent provision because (1) Plaintiffs' existing privacy policies—which their hosts and guests agree to as a condition of using each platform—already contain language that satisfies the consent requirement set forth in Local Law 146, and (2) Local Law 146 regulates conduct, not speech.  Further, even if the First Amendment was implicated (which it is not), Local Law 146 is rationally related to the goals of reducing illegal transient use, preserving permanent housing, and ensuring public safety, and thus, it does not violate the First Amendment.

---

[21] Plaintiff HomeAway also alleges a violation of Article I, Section 8 of the New York State Constitution. HomeAway Memo. at 19.  While Plaintiff HomeAway is correct that New York State courts have often found that Article I, Section 8 of the New York State Constitution affords greater protections than the First Amendment, that is not the case here where Local Law 146 does not compel speech, and further, even if it did, there is a legitimate basis for the regulation.  See A.B.C. Home Furnishings v. Town of E. Hampton, 947 F. Supp. 635, 643-44 (E.D.N.Y. 1996) (court need not resolve distinction between federal and New York State free speech claims because government action did not regulate speech).  Accordingly, for the same reasons set forth herein, Plaintiff HomeAway cannot establish a likelihood of success on the merits of its Article I, Section 8 claim.

### 1.        Plaintiffs' Privacy Policies Satisfy the Consent Requirement.

The fallacy (and irony) of Plaintiffs' "compelled" speech arguments are revealed when one reviews Plaintiffs' own privacy policies—policies that their users must accept or else they cannot use the platforms.   As discussed more fully *supra*, in those privacy policies, Plaintiffs explicitly inform their users that their personal information will be disclosed to the Government as required by applicable law.   <u>See</u> <u>supra</u> at Point I(A)(1)(c) (citing Countryman Decl., Ex. B., p. 16 § 3.5 and Furlong Decl., Ex. B, p. 3).    Accordingly, the disclosures contemplated by Local Law 146 are already covered by the broad language contained in Plaintiffs' existing privacy policies, and Plaintiffs have been "compelled" to do nothing to comply with the consent provision set forth in Admin. Code § 26-2102(b).   <u>See</u> Admin. Code § 26-2102(b) (lawful consent may be obtained by "advising or providing notice to a user of the booking service that new or continuing use of such booking service as a host constitutes consent to such disclosure").

### 2.        Local Law 146 Regulates Conduct, Not Speech.

The consent provision set forth in Local Law 146 regulates conduct, not speech, and thus, the First Amendment is not implicated.  In pertinent part, the law states the following:

> A booking service **shall obtain, from each host using such booking service to offer, manage or administer a short-term rental, lawful consent** to provide the information described in subdivision a to the administering agency. **Obtaining lawful consent may include, but is not limited to**, **advising or providing notice to a user of the booking service that new or continuing use of such booking service as a host constitutes consent to such disclosure.** It shall not be a defense to a violation of subdivision a that the booking service did not obtain consent.

Admin. Code § 26-2102(b) (emphasis supplied).  Contrary to Plaintiffs' contentions, Local Law 146 does not mandate the manner in which booking services must obtain that consent, nor does it

dictate the content of their speech.  The use of the permissive term "may" and the phrase "but is not limited to," before the phrase "advising or provide notice to a user," makes that plain. Booking services can say whatever they want about Local Law 146, and they can choose to obtain hosts' consent in any way they see fit.  Local Law 146 "affects what [booking services] must do—[obtain consent]—not what they may or may not say."  Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 60 (2006).

While the Supreme Court has noted that First Amendment protections may extend "to conduct that is inherently expressive," Rumsfeld, 547 U.S. at 66, such as flag burning, see Texas v. Johnson, 491 U.S. 397 (1989), wearing black armbands to protest the Vietnam War, see Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503 (1969), or conducting a sit-in to protest racial segregation, see Brown v. Louisiana, 383 U.S. 131 (1966), such expressive conduct is clearly not present here.  Laws directed at "commerce or conduct," such as Local Law 146, do not implicate the First Amendment because they impose, at most, "incidental burdens on speech."  Sorrell v. IMS Health Inc., 564 U.S. 552, 567 (2011); see also Virginia v. Hicks, 539 U.S. 113, 123 (2003) (laws regulating "nonexpressive conduct" do not have "anything to do with the First Amendment"); Keep Chi. Livable v. City of Chicago, No. 16-10371, 2017 U.S. Dist. LEXIS 35231, at *13 (N.D. Ill. Mar. 13, 2017) (Airbnb hosts failed to demonstrate that they were likely to succeed in establishing that Shared Housing Ordinance targeted expressive conduct or speech instead of economic activity).

> 3. **Assuming *Arguendo* that Local Law 146 Compels Speech, It Is Rationally Related to the Goals of Reducing Illegal Transient Use, Preserving Permanent Housing, and Ensuring Public Safety.**

To the extent that Local Law 146 can be construed as compelling speech (which it does not), it relates to commercial speech.[22]  See Airbnb Memo. at 29.  While non-misleading commercial speech is protected under the First Amendment, it is entitled to less extensive protection than other "constitutionally guaranteed expression."  Central Hudson, 447 U.S. at 562. Generally, restrictions on commercial speech are subject to intermediate scrutiny and analyzed under the four-part test set forth in Central Hudson.  See Florida Bar v. Went For It, Inc., 515 U.S. 618, 623-24 (1995).  However, both the Supreme Court and Second Circuit have found that statutes that require, rather than restrict, commercial speech, receive an even more deferential standard of review.  See Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 651 (1985); Nat'l Elec. Mfrs. Ass'n v. Sorrell, 272 F.3d 104, 114 (2d Cir. 2001).

In Zauderer, 471 U.S. at 651, the Supreme Court rejected the argument that a disclosure requirement pertaining to attorney advertising and fee arrangements must satisfy heightened scrutiny, and instead, simply held that it must be "reasonably related to the State's interest in preventing deception of consumers."  Id.  Applying Zauderer to uphold a Vermont statute requiring manufacturers of certain products to warn consumers that the product contains mercury, the Second Circuit noted that "the disclosure of accurate, factual commercial information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interests."  Sorrell, 272 F.3d at 114.  The Second Circuit went on to state that a disclosure requirement withstands First Amendment review if there is a "rational connection between the purpose of a commercial disclosure requirement and the means employed to realize that purpose."  Id. at 115; see also N.Y. State Restaurant Ass'n v. N.Y.C. Bd. of Health, 556 F. 3d 114, 118 (2d Cir. 2009).

---

[22] The Supreme Court has defined commercial speech as "expression related solely to the economic interests of the speaker and its audience," or, alternatively, as speech "proposing a commercial transaction."  Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of N. Y., 447 U.S. 557, 560 (1980).

a.      *Local Law 146 Satisfies the Rational Basis Test.*

At the outset, it is worth noting what is *not* required to pass muster under rational basis review.  First, the government does not have to produce evidence or empirical data to sustain rationality; instead, it can rely upon "rational speculation."  Lewis v. Thompson, 252 F.3d 567, 582 (2d Cir. 2001).  Second, the statute or regulation does not have to eliminate all of the evils it was designed to ameliorate.  See Sorrell, 272 F.3d at 115-16.  Local Law 146 satisfies the rational basis test as there is a reasonable relationship between the intended purpose of the ordinance and the means employed to achieve that purpose.

The City Council adopted Local Law 146 to "further address the adverse effect, well-documented by a number of reports issued and studies conducted by both governmental and non-governmental organizations, resulting from conversion of permanent housing to rentals under 30 days, despite the 2010 and 2016 legislative amendments to the Multiple Dwelling Law by the New York State Legislature[.]"  Klossner Decl., Ex. G.  Those reports and studies include: (i) an October 2014 report by the New York Attorney General that found that "72 percent of units used as private short-term rentals on Airbnb appeared to violate State and local laws"; (ii) a June 2016 MFY Legal Services report that found that over 55% of Airbnb's NYC listings are illegal and that over 8,000 housing units were lost to Airbnb in 2015, reducing available housing by 10%; (iii) a January 2018 report from Professor David Wachsmuth of McGill University that found that "Airbnb has removed between 7,000 and 13,500 units of housing from New York City's long-term rental market, including 12,200 frequently rented entire-home listings that were available for rent 120 days or more and 5,600 entire-home listings available for rent 240 days or more"; and (iv) an April 2018 report from the New York City Comptroller that found that "[i]n aggregate, New York City renters had to pay an additional $616 million in 2016 due to price pressures created by Airbnb," and "[b]etween 2009 and 2016, approximately 9.2 percent of the

citywide increase in rental rates can be attributed to Airbnb.".  Id., Exs. C-F.  The deleterious effects of illegal transient use were also powerfully detailed by numerous local officials, representatives of community groups and advocacy organizations, and New York City residents at a June 26, 2018 City Council committee hearing.  Id. at ¶ 26; Ex. H.

As explained in the accompanying declaration of OSE Executive Director Christian Klossner, the transactional information provided by the booking services will allow the City to more effectively enforce existing laws that prohibit the unlawful conversion of permanent residences for transient use, ensure public safety, and preserve permanent housing.  See Klossner Decl. ¶¶ 17, 28-33, 39-41.  The need for Local Law 146 is further illuminated by Plaintiff Airbnb's own filings in this case.  In a misguided effort to support its application for a preliminary injunction, Airbnb has submitted a declaration from one of its top executives, David Countryman, touting the fact that it continues to allow thousands upon thousands of listings on its platform that advertise the rental of an "entire home" in New York City.  Countryman Decl. ¶¶ 14-15, 19.  Yet, such "entire home" listings are presumed illegal under State and local laws which prohibit the rental of an entire dwelling unit for less than thirty (30) days.  See, e.g., MDL § 4(8); Admin. Code §§ 28-210.3, 28-118.3.2, 27-2004, 27-265; Building Code §§ 310.1.2, 310.2.  By openly and actively facilitating illegal activity[23]—and showing a blatant unwillingness to police their own platforms—Plaintiffs have left the City with no choice but to pursue additional regulation to stem the negative effects of illegal transient use on the City's permanent housing stock and the safety of its residents and visitors.

---

[23] Illegal activity is not protected by the First Amendment.  See Central Hudson, 447 U.S. at 566.  Along with allowing hosts to utilize their platforms to traffic in illegal activity—and handsomely profiting from it—Plaintiffs turn a blind eye to the deception perpetrated against unwitting travelers regarding the legality and safety of the accommodations they are booking.

Based on the foregoing, it is apparent that there is a rational relationship between obtaining the consent of hosts for the disclosure of certain transactional information by the booking services, and the goals of reducing illegal transient use, preserving permanent housing, and ensuring public safety.  Therefore, there is no violation of the First Amendment.

> b.   *If Zauderer Does Not Apply, Local Law 146 Still Satisfies the Intermediate Scrutiny Standard of Review.*

Assuming *arguendo* that the Zauderer-Sorrell framework for rational basis review is not applicable, then intermediate scrutiny applies.[24]  Under the test set forth in Central Hudson, the commercial speech must concern lawful activity and not be misleading, the asserted governmental interest must be substantial, and the regulation must directly advance the governmental interest and not be more extensive than necessary to serve that interest.  Central Hudson, 447 U.S. at 566; see also United States v. Caronia, 703 F.3d 149, 164 (2d Cir. 2012).

The problems identified by the City Council—the rise in illegal transient use, the removal of permanent housing from the New York City housing market, and the unsafe conditions associated with illegal hotel rooms—are addressed by Local law 146's transactional disclosure requirements, which are predicated on obtaining the consent of the hosts.  As discussed more fully above, numerous independent reports and studies have documented the adverse impact that illegal transient use has had on the New York City housing market.  That adverse impact was further detailed at the June 26, 2018 City Council hearing where numerous residents, elected officials, and community organizations testified and urged passage of legislation requiring booking services to disclose data needed by the City to address the ongoing

---

[24] Both Plaintiffs argue that intermediate scrutiny applies.  See Airbnb Memo. at 29; HomeAway Memo. at 21-22.  However, at one point, HomeAway appears to argue in the alternative that strict scrutiny applies.  HomeAway Memo. at 20 (citing Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015) and Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994)).  Plaintiff HomeAway's strict scrutiny argument (advanced in only one sentence) is off base.  Local Law 146 is not a content-based regulation that restricts expression based on message or ideas.  Courts have continued to apply Central Hudson and its progeny to commercial speech cases following the Reed decision.  See Boelter v. Advance Magazine Publrs. Inc., 210 F. Supp. 3d 579, 598 n.15 (S.D.N.Y. 2016) (collecting cases).

illegal activity.  Along with reducing the availability of permanent housing, driving up rents, and adversely impacting the residential character of numerous neighborhoods and buildings throughout this City, illegal transient rentals pose a significant safety risk as the units typically do not comply with heightened New York City Fire Code and Building Code requirements applicable to transient uses such as hotels.  Ameliorating these negative conditions is clearly a substantial governmental interest, and as explained in the Declaration of Christian Klossner, the transactional information provided by the booking services under Local Law 146 will assist the City in identifying wrongdoers and problematic locations, setting enforcement priorities, and reducing the amount of illegal and unsafe transient use in the City.  See Klossner Decl. ¶¶ 17, 28-33, 39-41.  Accordingly, Local Law 146 satisfies intermediate scrutiny review.

## POINT II

### PLAINTIFFS HAVE FAILED TO SHOW IRREPARABLE HARM.

Since constitutional violations are commonly considered irreparable injuries, the irreparable injury requirement for a preliminary injunction dovetails with the requirement that Plaintiffs demonstrate a likelihood of success on the merits of their claims.  Here, as Plaintiffs cannot establish a likelihood of success on the merits, they also fail to establish irreparable harm.

Plaintiffs also advance other independent grounds for irreparable harm, all of which are insufficient.  For example, Plaintiffs argue that irreparable harm exists because Local Law 146 will result in "ruinous penalties" or cause them to "undertake the significant costs of compliance."[25]  Airbnb Memo. at 31, 33 n.12; see also HomeAway Memo. at 23-24.  However, "[a] monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation."  Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d

---

[25] Plaintiffs' protestations appear to be overstated as, upon information and belief, Airbnb already has processes in place to share transactional or host identifying information with other municipalities.  Klossner Decl. ¶ 35.

969, 975 (2d Cir. 1989); see also Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005).  Plaintiffs have failed to submit such evidence.  In addition, the Second Circuit has noted that "ordinary compliance costs are typically insufficient to constitute irreparable harm."  Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 115 (2d Cir. 2005).  Plaintiffs also argue that their compliance with Local Law 146 could result in lawsuits under the SCA.  Airbnb Memo. at 32; HomeAway Memo. at 23.  This is incorrect as the SCA confers immunity on covered providers for disclosures made pursuant to sections 2702 and 2703.  See 18 U.S.C. § 2703(e); 18 U.S.C. § 2707(e).  Finally, Plaintiffs argue that Local Law 146's disclosure requirement could result in a loss of business and consumer goodwill.  Airbnb Memo. at 32; HomeAway Memo. at 23.  This is highly unlikely since, as discussed above, their hosts have already agreed pursuant to Plaintiffs' terms of service and privacy policies that their personal information may be disclosed to third-parties, including the Government.  In any event, Plaintiffs fail to submit evidence to support these contentions other than self-serving declarations from executives who offer suppositions about what their customers "could" do or are "likely" to do if Local Law 146 is implemented.  See Countryman Decl. ¶ 23; Furlong Decl. ¶¶ 18-19.  These are insufficient to demonstrate irreparable harm and, thus, Plaintiffs' motions must be denied.

Dated:      New York, New York
             September 24, 2018

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
Attorney for Defendant

By:____/s/ Karen B. Selvin_____
    Karen B. Selvin (KS-3816)
    Carlos Fernando Ugalde Alvarez (CU-3171)
    100 Church Street, Rm. 5-143
    New York, New York  10007
    Tel: 212-356-2208
    Email: kselvin@law.nyc.gov