UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
AIRBNB, INC.,

                                             Plaintiff,

18 Civ. 7712 (PAE)
18 Civ. 7742 (PAE)

        -against-

THE CITY OF NEW YORK,

                                             Defendant.
------------------------------------------------------------------x
HOMEAWAY. COM, INC.,

                                             Plaintiff,

        -against-

CITY OF NEW YORK,

                                             Defendant.
------------------------------------------------------------------x

**DECLARATION OF PUICHUN LI FOR PROPOSED *AMICI CURIAE*
ELECTED OFFICIALS, LEGAL SERVICES, HOUSING,
FIREFIGHTERS UNION, AND OTHER ADVOCACY ORGANIZATIONS,
AND INTERESTED NEW YORK CITY RESIDENTS IN OPPOSITION
TO <u>PLAINTIFFS' MOTIONS FOR A PRELIMINARY INJUNCTION</u>**

I, Puichun Li, declare as follows:

       1.      I am a member of the Bar of the State of New York with *pro hac vice* application to appear before this Court forthcoming.  I am a Staff Attorney with the Community Development Project at the Urban Justice Center ("CDP"), attorneys for New York State Senator Liz Krueger, New York State Senator Brad Hoylman, Manhattan Borough President Gale Brewer, New York State Assembly Member Linda Rosenthal, New York State Assembly Member Richard N. Gottfried, New York State Assembly Member Deborah J. Glick, New York State Assembly Member Harvey Epstein, the Community Development Project at the Urban Justice Center, Uniformed Firefighters Association of Greater New York, Local 94 U.A.F.F.,

AFL-CIO, Housing Conservation Coordinators, Inc., Inside Airbnb, Goddard Riverside Law Project, Association for Neighborhood & Housing Development, St. Nicks Alliance, Westside Neighborhood Alliance, West 47th Street Tenant Association, Mobilization for Justice, Inc., The Legal Aid Society, and several interested New York residents (collectively, the "*Amici*").

2. I submit this Declaration with exhibits from elected officials, legal services, housing, firefighters union, and other advocacy organizations, and interested New York City residents (the "Declaration") in support of the Motion of *Amici* for leave to file the Memorandum of Law in Opposition to Plaintiffs' Motions for a Preliminary Injunction ("*Amici*'s Memorandum of Law," attached to *Amici*'s Motion as **Exhibit 1**) and this Declaration (Motion, **Exhibit 2**), and in opposition to Plaintiffs' Motions for a Preliminary Injunction enjoining Local Law 146 of 2018, codified as New York City Administrative Code §§ 26-2101-5, in the above-captioned consolidated actions (the "Motions"), and for such other relief as this Court deems proper.

3. For more than 15 years, CDP has offered legal services and support on housing issues to community non-profits, groups, and individuals in New York City's low-income neighborhoods. We have helped community groups and tenants around the City to repair illegal housing conditions, recover illegal rent overcharges, and preserve rent-regulated housing.

4. CDP is a member of the Coalition Against Illegal Hotels, a coalition of more than 40 housing and tenants' rights organizations, that has been fighting illegal hotels for more than a decade. The coalition grew out of the Illegal Hotels Working Group, which includes city, state and federal elected officials, community based organizations and housing groups.

5. In my capacity as a staff attorney at the Community Development Project, I represent tenant-plaintiffs in *Amelius v. Grand Imperial LLC*, Index No. 155226/2016, 2016 N.Y. Misc. LEXIS 4383 (Sup. Ct. N.Y. Co. Nov. 29, 2016), a matter involving illegal and

hazardous short-term rentals in at least 2/3 of the 227 units in the building located at 307 West 79st Street.

6.  CDP submits this Declaration with exhibits from *Amici* to explain to the Court the critical impact the issues in this case will have on New York families and tenants and why, viewed in context, Airbnb and HomeAway's arguments must be rejected and Local Law 146 of 2018 should be enforced.

7.  Allowing enforcement of Local Law No. 146 of 2018 will help curtail illegal and transient use of apartments in New York City. As discussed more fully herein and in *Amici*'s Memorandum of Law, the issues presented are of profound importance to tens of thousands, if not more, of the approximately 1 million New York families currently living in rent regulated apartments.[1]

**Illegal Commercial Hosts Distort New York City's Residential Rental Market**

8.  New York City remains in a housing crisis, as affordable rentals continue to decrease.

9.  Rent regulated apartments form the backbone of the City's affordable housing inventory, with regulated apartments comprising the majority of units renting for between $601 and $1,800.[2]

10.  The 2017 New York City Housing and Vacancy Survey showed that demand for rent-stabilized housing is high, with a stabilized vacancy rate at 2.06%.[3]

---

[1] *See* New York City Rent Guidelines Board Rent Stabilization FAQ (last visited September 28, 2018), *available at* http://www1.nyc.gov/site/rentguidelinesboard/resources/rent-stabilization.page.

[2] *See* The Gap is Still Growing: New York City's Continuing Housing Affordability Challenge (last visited September 28, 2018), *available at* https://comptroller.nyc.gov/reports/the-gap-is-still-growing-new-york-citys-continuing-housing-affordability-challenge/.

[3] *See* Selected Initial Findings of the 2017 New York City Housing and Vacancy Survey (last visited September 28, 2018), *available at* https://www1.nyc.gov/assets/hpd/downloads/pdf/about/2017-hvs-initial-findings.pdf.

11. With the rise of online platforms beginning approximately a decade ago, housing advocates and legal service providers noticed that New York City's tight rental market became further constricted through the decrease in the supply of available housing.

12. Countless tenants came to our offices, mostly from gentrifying neighborhoods, to report that units around the city that once housed actual New York City residents had been converted into short-term rentals for tourists. This trend was especially noticeable in single-room occupancy (SRO) buildings.

13. There were reports of transient guests throwing loud parties and a steady stream of strangers in units that once held long-term tenants. In some cases, entire apartment buildings were converted into illegal hotels.

14. With an easy way to skirt the Rent Stabilization Law, landlords had ample incentive to use improper means to drive out tenants quickly so as to increase the number of available vacancies. Advocates have repeatedly seen a correlation between heightened tenant harassment in residential buildings – ranging from frivolous lawsuits, disruptive construction, reduced services and failure to make repairs – when the landlord is illegally renting some units to transient guests.

15. An in-depth study published in 2016, *Short Changing New York City: the Impact of Airbnb on New York City's Housing Market* – available at http://www.hcc-nyc.org/documents/ShortchangingNYC2016FINALprotected_000.pdf – confirmed that use of apartments for short-term rentals was pervasive and concerted:

> A significant number of hosts engage in commercial activity through Airbnb. In fact, 70 percent of all units listed in New York City have more than one reservation per month, and **over 30 percent of Airbnb listings in New York City are classified as Commercial** based on the number of units controlled by the host and the length of time the listing is available on Airbnb. Even more staggering, **8,058 listings (16 percent of all listings) are defined as Impact Listings**, due to regular

4

participation in commercial activity on the Airbnb platform. **More than half of these Impact Listings were managed by hosts that control multiple Airbnb units.** In the aggregate, **these Impact Listings are likely to generate $27.6 million in average monthly revenue.**

16. Moreover, it validated what advocates had known for years but did not have aggregated data to prove, that the scale of the Impact Listings may exacerbate already severely low vacancy rates, particularly in targeted neighborhoods.

### Local Law 146 Is a Valuable Enforcement Tool

17. Local Law 146 is a valuable enforcement tool that New York City and its residents need to stem illegal conduct. Companies such as Airbnb and HomeAway do not have an incentive to police illegal conversions of permanent residences to transient occupancies since it hurts their business model and bottom line.

18. The lack of transparency of the booking system allows landlords to skirt the laws to the detriment of not only tenants, but the residential rental market and the fabric of New York City's neighborhoods.

19. Without the data collected through Local Law 146, the New York City Mayor's Office of Special Enforcement ("OSE") is hampered in its ability to protect tenants. Without adequate evidence to identify illegal activity with certainty, OSE must heavily rely on on-the-ground inspections that may not capture the true situation as transient renters are coached to lie to inspectors or not answer the door.

20. The required disclosures would also have a deterrent effect by hampering illegal activity as landlords will change their behavior knowing that records will be scrutinized.

21. Tenants with matters in active litigation will also benefit from this law. Tenant-plaintiffs in *Amelius v. Grand Imperial LLC* have been frustrated in their ability to reach a timely

resolution to their claims in part due to online booking services challenging subpoenas that seek critical information about transient rentals.

22. Housing advocacy groups and legal services providers work in partnership with OSE to protect tenants and safeguard the affordable housing stock. Our clients strongly supported the passage of Local Law 146 of 2018 and are united in opposition to Airbnb and HomeAway's efforts to enjoin the City from enforcing the law.

### Exhibits from Proposed *Amici*

23. Attached hereto as **Exhibit A** is a true and correct copy of the Declaration of New York State Senator Liz Krueger, dated October 1, 2018, which explains how illegal short-term rental activities have shifted over the years from being organized by a relatively small number of local operators, frequently unscrupulous building owners or managers, to large online booking services such as Plaintiffs, Airbnb and HomeAway, that act as both marketplace and middleman for millions of short-term residential housing rentals around the world. The Krueger Declaration further provides that the proliferation of illegal short-term rentals has removed tens of thousands of dwelling units from an already tight housing market, disrupted the lives of countless permanent residents, particularly residents living in rent stabilized apartments, decreased the revenue the City receives from hotel taxes, and ruined many visitors' experiences in New York. Lastly, the Krueger Declaration provides that Local Law 146 is an invaluable tool for strengthening New York City's ability to substantially improve its response to complaints, conduct proactive enforcement action against commercial illegal hotel operators, and stem the tide of illegal hotel activity.

24. Attached hereto as **Exhibit B** is a true and correct copy of the Declaration of New York State Senator Brad Hoylman, dated September 28, 2018, which highlights that illegal short-

term rentals, facilitated by booking services such as Airbnb and HomeAway, have contributed to increased rents in his Manhattan district – which has been reported as containing more Airbnb rentals than any other in the State Senate – from 2009 to 2016.

25.     Attached hereto as **Exhibit C** is a true and correct copy of the Declaration of Manhattan Borough President Gale Brewer, dated October 1, 2018, which makes clear that the lack of housing that is affordable to the poor and working people of the City is by far the deepest, most intractable problem we face, and leads to the burgeoning homelessness our City is experiencing, as thousands of families and individuals are forced from their homes with each rent increase.  The Brewer Declaration also provides that Local Law 146 offers an effective tool with which to enforce the law and protect tenants and housing, particularly when it is difficult to locate and track the most egregious offenders.

26.     Attached hereto as **Exhibit D** is a true and correct copy of the Declaration of New York State Assembly Member Linda Rosenthal, dated October 1, 2018, which provides that New York City is Airbnb's third largest market worldwide, with more than 50,000 listings citywide, and that between 2009 and 2016, approximately 9.2 percent of the citywide increase in rent rates can be attributed to Airbnb.  The Rosenthal Declaration also provides that booking services help professionalize an illegal hotel industry and enable operators to scale up easily.  The Rosenthal Declaration demonstrates how illegal short-term rentals adversely affect permanent residents' quality of life.  Lastly, the Rosenthal Declaration makes clear that booking services' policies already make clear that they will share their hosts' information, and have in fact shared transactional information with multiple other cities.

27.     Attached hereto as **Exhibit E** is a true and correct copy of the Declaration of New York State Assembly Member Richard Gottfried, dated September 28, 2018, which provides his

7

extensive involvement in the legislative amendment of illegal short-term rental laws, and details numerous complaints he has received over the years about dwelling units being turned into de facto hotels with landlords or building managers' active participation or passive consent.

28. Attached hereto as **Exhibit F** is a true and correct copy of the Declaration of New York State Assembly Member Deborah Glick, dated October 1, 2018, which provides details of several of her constituents who have been adversely affected by illegal short-term rentals, and her observation of patterns throughout her district as a result of illegal hotel listings advertised on the booking services. The Glick Declaration also provides that many tenants including, disproportionately, those in communities of color, have been displaced by the spread and growth of illegal short-term rentals.

29. Attached hereto as **Exhibit G** is a true and correct copy of the Declaration of New York State Assembly Member Harvey Epstein, dated October 1, 2018, which provides details of several constituents adversely affected with illegal short-term rentals, and the significant number of constituent complaints of illegal short-term rentals (from 50 complaints in 2017 to 87 complaints as of September 2018 – a 74% increase).

30. Attached hereto as **Exhibit H** is a true and correct copy of the Declaration of LeRoy C. McGinnis, Vice President of Uniformed Firefighters Association of Greater New York ("UFA"), dated October 1, 2018, which raises serious concerns about the rampant proliferation of illegal short-term rentals in units that lack the required fire safety measures, such as fire alarms, sprinkler systems, and evacuation plans, and includes a recent example of five firefighters injured when responding to a fire emergency in a one-family residence that had been illegally converted to ten rooms and rented out to numerous unrelated short-term guests.

31. Attached hereto as **Exhibit I** is a true and correct copy of the Declaration of Jonathan Furlong, Director of Organizing for Housing Conservation Coordinators ("HCC"), dated September 27, 2018, which highlights that illegal short-term rentals have contributed to an overall loss of about 10,000 units of housing from New York City's long-term rental market, adding to an already extensive list of causes that contribute to the City's housing crises. The HCC Declaration also provides examples of illegal short-term rental conversion in neighborhoods such as Hell's Kitchen and the Lower East Side, and how such illegal conversion adversely impacts permanent residents' quality of life.

32. Attached hereto as **Exhibit J** is a true and correct copy of the Declaration of Murray Cox, founder of Inside Airbnb ("Inside Airbnb"), dated October 1, 2018, which provides that Airbnb's anonymization of location information for listings makes it difficult for the City to enforce housing laws. The Inside Airbnb Declaration also provides that as of September 2018, 52% of the more than 52,000 Airbnb listings New York City are for entire homes, and more than 12,500 of such entire home Airbnb listings were frequently rented for more than 60 days a year.

33. Attached hereto as **Exhibit K** is a true and correct copy of the Declaration of Lana Pelletier McCrea, Staff Attorney at Goddard Riverside Law Project ("GRLP"), dated October 1, 2018, with exhibits and affidavits, which provides that illegal short-term rentals, facilitated by the booking services, have grown and turned single room occupancy ("SRO") housing for low-income (below $15,000 per year), elderly, or disabled residents into hotels. The GRLP Declaration provides specific examples of a number of SRO buildings where hundreds of such permanent housing units have being illegally converted to short-term rentals.

34. Attached hereto as **Exhibit L** is a true and correct copy of the Declaration of Benjamin Dulchin, Executive Director of the Association for Neighborhood and Housing

9

Development ("ANHD"), dated September 28, 2018, which highlights that 70% of the Airbnb listings in New York City are illegal. The ANHD Declaration also provides that about 1,400 Airbnb hosts operated more than 3 dwelling units, controlled 1 in 5 Airbnb listings, and collected $168 million for their short-term rentals. Lastly, the ANHD Declaration that the laws regulating short-term rentals exist for housing as well as for safety reasons.

35. Attached hereto as **Exhibit M** is a true and correct copy of the written statement of Rolando Guzman, Deputy Director Community Preservation of St. Nicks Alliance, ("St. Nicks"), dated September 28, 2018, which provides that many residential units have been illegally converted from permanent housing to short-term rentals in Northern Brooklyn, including in the neighborhoods of Williamsburg and Greenpoint, and many long-term tenants are facing harassment and displacement as a result.

36. Attached hereto as **Exhibit N** is a true and correct copy of the written statement of Tom Cayler, a member of the Westside Neighborhood Alliance ("WSNA"), dated September 28, 2018, which provides details of his personal experience living in a building with illegal short-term rentals, and his years of advocacy work with many Westside residents struggling with illegal short-term rentals in their buildings that contributed to rent-stabilized apartments being de-regulated.

37. Attached hereto as **Exhibit O** is a true and correct copy of the written statement of Chris LeBron, President of the West 47th Street Tenant Association ("West 47th St. Tenants Assoc."), dated September 26, 2018, which provides details of numerous permanent residential dwelling units on 47th Street between 8th and 9th Avenues in Manhattan being illegally converted to short-term rentals with the building owner's participation, and provides that the illegal short-term rentals have adversely affected many residents' quality of life.

38. Attached hereto as **Exhibit P** is a true and correct copy of the Declaration of Justin La Mort, Supervising Attorney at Mobilization for Justice, Inc. ("MFJ"), dated October 1, 2018, which supports the City's position that the Court should deny Plaintiffs' Motions and allow Local Law 146 of 2018 to be enforced.

39. Attached hereto as **Exhibit Q** is a true and correct copy of the Declaration of Judith Goldner, Attorney in Charge, Civil Law Reform Unit, of The Legal Aid Society ("Legal Aid Society") dated October 1, 2018, which supports the City's position that the Court should deny Plaintiffs' Motions and allow Local Law 146 of 2018 to be enforced.

40. Attached hereto as **Exhibit R** is a true and correct copy of the written statement of Vivian E. Riffelmacher, dated September 27, 2018.  Ms. Riffelmacher provides that she has been a New York City resident for 35 years, and has experienced illegal short-term rentals first in her building in the Upper West Side, and then then later at a different building in Washington Heights.  Ms. Riffelmacher provides a detailed description of the disruptions the noise and foot-traffic of short-term rentals have caused her.

41. Attached hereto as **Exhibit S** is a true and correct copy of the written statement of Georgette Fleischer, dated September 27, 2018.  Ms. Fleischer provides that she is a New York City resident who has experienced illegal short-term rentals in her four-story building in Little Italy, which has caused safety concerns and other disruptions to her quality of life.

42. Attached hereto as **Exhibit T** is a true and correct copy of the written statement of Jim Markowich, dated October 1, 2018.  Mr. Markowich lives in a walk-up building in the East Village, and has been affected by the building owner and the commercial operators who have run illegal short-term rentals.

43. Attached hereto as **Exhibit U** is a true and correct copy of the written statement provided by Matthew Abuelo, dated September 30, 2018. Mr. Abuelo provides that he was previously a resident in an Upper West Side building where illegal short-term rentals overtook his building, causing safety and other disruption to his quality of life.

44. Attached hereto as **Exhibit V** is a true and correct copy of the written statement of Richard Amelius, dated September 30, 2018. Mr. Amelius provides that he likewise resides in an Upper West Side building with illegal short-term rentals that have caused safety and other disruption to his quality of life.

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Law in Support of the Motion of *Amici Curiae* for Leave to File, *Amici* respectfully request that this Court enter an Order granting proposed *Amici Curiae* New York State Senator Liz Krueger, New York State Senator Brad Hoylman, Manhattan Borough President Gale Brewer, New York State Assembly Member Linda Rosenthal, New York State Assembly Member Richard N. Gottfried, New York State Assembly Member Deborah J. Glick, New York State Assembly Member Harvey Epstein, the Community Development Project at the Urban Justice Center, Uniformed Firefighters Association of Greater New York, Local 94 U.A.F.F., AFL-CIO, Housing Conservation Coordinators, Inc., Inside Airbnb, Goddard Riverside Law Project, Association for Neighborhood & Housing Development, St. Nicks Alliance, Westside Neighborhood Alliance, West 47th Street Tenant Association, Mobilization for Justice, Inc., The Legal Aid Society, and several interested New York residents:

   (1)   status in this matter;

   (2)   leave to file *Amici*'s Memorandum of Law (Motion, **Exhibit 1**) and this Declaration with accompanying exhibits (Motion, **Exhibit 2**) in Opposition to

    Plaintiffs' Motions for a Preliminary Injunction enjoining Local Law 146 of 2018; and

(3) such other relief as this Court deems proper.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed: New York, New York
     October 1, 2018

_____
Puichun Li (*pro hac* admission pending)