**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AIRBNB, INC.,<br><br>Plaintiff,<br>v.<br><br>THE CITY OF NEW YORK,<br><br>Defendant. | CIVIL ACTION NO. 1:18-cv-7712-PAE |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Roberta A. Kaplan
John C. Quinn
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883

Sharon L. Nelles
John G. McCarthy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Plaintiff Airbnb, Inc*

October 1, 2018

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ....................................................................................... 1

I. AIRBNB IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS ..................... 1

A. The Fourth Amendment ................................................................................ 1

B. Stored Communications Act .......................................................................... 5

C. Compelled Speech ........................................................................................ 8

II. AIRBNB SATISFIES THE OTHER PRELIMINARY INJUNCTION FACTORS ......... 10

CONCLUSION ........................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*City of Los Angeles* v. *Patel*,
135 S. Ct. 2443 (2015) ........ 1, 2, 3, 4

*Cotropia* v. *Chapman*,
721 F. App'x 354 (5th Cir. 2018) ........ 3

*Hale* v. *Henkel*,
201 U.S. 43 (1906) ........ 2

*Homeaway.com, Inc.* v. *City of Santa Monica*,
No. 2:16-cv-06641, 2018 WL 3013245 (C.D. Cal. June 14, 2018) ........ 4

*Landon* v. *City of Flint*,
No. 16-cv-11061, 2016 WL 7661390 (E.D. Mich. Nov. 30, 2016) ........ 4

*Patel* v. *City of Los Angeles*,
738 F.3d 1058 (9th Cir. 2013) ........ 2, 4

*Puerto Rico* v. *Franklin California Tax-Free Tr.*,
136 S. Ct. 1938 (2016) ........ 6

*Riley* v. *Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
487 U.S. 781 (1988) ........ 9

*Rubin* v. *Coors Brewing Co.*,
514 U.S. 476 (1995) ........ 9

*See* v. *City of Seattle*,
387 U.S. 541 (1967) ........ 2

*Sorrell* v. *IMS Health Inc.*,
564 U.S. 552 (2011) ........ 9

*United States* v. *Salerno*,
481 U.S. 739 (1987) ........ 5

*Zauderer* v. *Office of Disciplinary Counsel*,
471 U.S. 626 (1985) ........ 9

**Page(s)**

**STATUTES AND ORDINANCE**

18 U.S.C. § 2702 ........................................ 6, 7

18 U.S.C. § 2703 ........................................ 6, 7, 8

N.Y.C. Admin. Code § 26-2101 ........................................ 5

## PRELIMINARY STATEMENT

This case presents significant concerns about the protection of constitutional rights and fundamental privacy interests against government intrusion. In its Opposition, the City offers nothing to assuage those concerns. Instead, the City pronounces that it can require private companies to relinquish their own rights and conscript them into violating the privacy and security of individual New Yorkers by fiat. That is not, and cannot be, the law.

The City's defense of the Homesharing Surveillance Ordinance rests on the chief contention that Airbnb (or its hosts) have somehow consented to the forced collection of sensitive personal and commercial information. That consent supposedly flows either from general language in Airbnb's existing user agreement or from the compelled "consent" that the Ordinance itself requires Airbnb to obtain. Under either theory, that consent is insufficient as a matter of law. Accepting the City's position would evade an entire legal framework built to safeguard core values of privacy. The Court should reject the City's unlimited and coercive view of governmental power that constitutes its defense of the Homesharing Surveillance Ordinance.

## I. AIRBNB IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS

### A. The Fourth Amendment

The City's argument in opposition to Airbnb's Fourth Amendment claim is a feeble effort to avoid the clear implications of *City of Los Angeles* v. *Patel*, 135 S. Ct. 2443 (2015), where the United States Supreme Court held that laws like the Homesharing Surveillance Ordinance are facially invalid if they fail to provide for precompliance review.

*First*, the City contends that Airbnb lacks a reasonable expectation of privacy in the information covered by the Homesharing Surveillance Ordinance because that information "belongs to [Airbnb's] customers, not [Airbnb]." Opp. at 14. But the Supreme Court squarely

rejected that argument in *Patel*, holding that, like other business records, information collected by hotels about their guests is fully protected by the Fourth Amendment. 135 S. Ct. at 2456; *see Patel* v. *City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013) (en banc) (collecting cases); *accord See* v. *City of Seattle*, 387 U.S. 541, 543 (1967); *Hale* v. *Henkel*, 201 U.S. 43, 76-77 (1906). The question is not whether the information originally comes from users (as was true of the guest book in *Patel*), or whether the information has been gathered and organized at someone else's direction (as was also true in *Patel*). Rather, the relevant question for Fourth Amendment purposes is whether the requested information is in Airbnb's possession and whether Airbnb maintains it as private. *See Patel*, 738 F.3d at 1062 ("That expectation of privacy is one society deems reasonable because businesses do not ordinarily disclose, and are not expected to disclose, the kind of commercially sensitive information contained in the records—e.g., customer lists, pricing practices, and occupancy rates."). These requirements are clearly satisfied here: Airbnb takes extensive steps to protect its users' information and discloses that information only in response to valid legal requests with limited exceptions. Countryman Decl. ¶¶ 7, 21, 22 & Ex. B.

The City errs further in claiming that Airbnb has abandoned Fourth Amendment protection for this information by disclosing *different* information to *different* third parties in *different* circumstances with *different* restrictions. *See* Opp. at 14-15 (relying on the Countryman Decl., Ex. B, § 3.5). The City does not identify even a single example of such disclosure, which makes it difficult to evaluate this claim. To the extent that the City is relying on Airbnb's user agreement, which describes how Airbnb responds to legal process (and does not even mention "consent"), Airbnb's commitment to honor valid legal process for specific information requests it receives from governmental authorities is hardly a reason to conclude that it has abandoned any reasonable expectation of privacy in all of its information. *Cf. Patel*, 135 S. Ct. at 2456 (applying Fourth

Amendment even though "some hotels chose to make registries accessible to the public"). To the contrary, the thoroughness with which Airbnb weighs demands for information confirms how seriously it takes its privacy (and the privacy and security of its users).[1]

*Second*, the City baldly contends that *Patel* doesn't apply. *See* Opp. at 14-15. But *Patel* applies where a city passes a law empowering it to review a company's records for "special needs" apart from individualized criminal investigation. That is the case here. If anything, the Fourth Amendment violation here is more egregious, as the Ordinance requires regular, wholesale disclosure—not just periodic inspection as in *Patel*. As such, it is broader in scope, imposes more frequent demands for information, and requires that Airbnb reveal to the City how all homesharing hosts are using their own homes regardless of any particularized concern.

That the ordinance in *Patel* imposed criminal penalties and the Homesharing Surveillance Ordinance levies civil sanctions is not significant to *Patel*'s holding. *Contra* Opp. at 16. Under both schemes, harsh penalties for non-compliance require businesses to make a painful choice, and thus "create[] an intolerable risk that searches . . . will exceed statutory limits, or be used as a pretext to harass." *Patel*, 135 S. Ct. at 2453; *see also Cotropia* v. *Chapman*, 721 F. App'x 354, 359 (5th Cir. 2018) (observing that "penalties for noncompliance" exacerbate an illegal search regime but "are not necessary for a constitutional violation"). Similarly, it does not matter that this Ordinance mandates that Airbnb turn over its private data wholesale, whereas the ordinance

[1] The City half-heartedly suggests that the Court should excuse it from precompliance review under *Patel* because, in its view, Airbnb is not responsive enough to legal process. Klossner Decl. ¶ 34. This suggestion has no basis in *Patel*. In any event, as reflected in Klossner's own "representative sampling" of prior enforcement actions, Airbnb *does* comply with valid legal process. *Id.* ¶¶ 16, 33; Countryman Decl. ¶ 9. And if Airbnb challenges the scope or manner of the City's requests for information, that is because—as explained above—it takes its own privacy and the privacy interests of its hosts seriously and the City has failed to issue valid legal process. Raising such concerns is *precisely* what precompliance review under *Patel* is all about.

in *Patel* authorized an inspection scheme. *Contra* Opp. at 15-16. In both situations, the government claims the power to seize troves of private data under circumstances rife with potential for abuse. *See Patel*, 135 S. Ct. at 2453; *see also Homeaway.com, Inc.* v. *City of Santa Monica*, No. 2:16-cv-06641, 2018 WL 3013245, at *8 (C.D. Cal. June 14, 2018) (applying *Patel* to a city ordinance requiring disclosure). Indeed, the City does not dispute that the Homesharing Surveillance Ordinance is the product of close coordination between the hotel lobby and Office of Special Enforcement officials, or that it will be used to harass and intimidate Airbnb and its users.

Nor can the City distinguish *Patel* on the ground that the Homesharing Surveillance Ordinance "requires that booking services obtain their hosts' consent before making any disclosures to the City." Opp. at 16. Not only is the City's consent argument defective, such a scheme would give *users* an unheard-of power to waive Airbnb's own distinct Fourth Amendment rights. *See Patel*, 738 F.3d at 1061-63. It also misreads a contract between Airbnb and its users as somehow dictating the terms of Airbnb's relationship with the government. And the fact that Airbnb facilitates the booking of accommodations between hosts and guests, rather than providing accommodations to guests itself, *see* Opp. at 16, does not diminish Airbnb's reasonable expectations of privacy in its own records.

In a final attempt to avoid *Patel*, the City asserts that *this lawsuit* constitutes the required precompliance review. Opp. at 16-17. Precompliance review is focused on specific legal process and is wholly different from federal lawsuit challenging the constitutionality of the underlying regulatory scheme. If the City were right, every lawsuit challenging a city ordinance for failure to provide precompliance review—including *Patel* and the cases on which it relied—would be self-defeating. At least one court faced with the same argument found it to be "absurd on its face." *Landon* v. *City of Flint*, No. 16-cv-11061, 2016 WL 7661390, at *4 (E.D. Mich. Nov. 30,

2016), *report and recommendation adopted*, No. 16-cv- 11061, 2017 WL 345854 (E.D. Mich. Jan. 24, 2017).[2]

### B. Stored Communications Act

The City fares no better in arguing that the Homesharing Surveillance Ordinance complies with the SCA. To begin with, the City correctly recognizes that Airbnb and HomeAway both qualify as ECSs and RCSs, and thus fall within the SCA's purview. Opp. at 21 n.16.[3] The City also admits that the SCA covers host information that the Ordinance compels platforms to turn over. To be sure, the City dresses up that concession as an argument that "certain" host information is public and therefore *not* protected by the SCA. Opp. at 19. But if the information the City is seeking were in fact public, the City never would have enacted the Ordinance. The admitted goal of the Ordinance is to obtain vast amounts of private data that the City doesn't already have. Klossner Decl. ¶¶ 17, 29. In reality, some of the information the City suggests is public, such as hosts' full names, Opp. at 19, is not in fact public. But more fundamentally, the City's framing recognizes the applicability of the SCA—even if certain host information is public, *most* of it is private and therefore protected by the SCA.[4]

---

[2] The City does not contend that Airbnb participates in a pervasively regulated industry. Further, its objections to Airbnb's claim under Article 1, Section 12 of the N.Y. Constitution, which provides even greater protection than the Fourth Amendment, overlap in all material respects with its Fourth Amendment arguments—and thus fail for the same reasons.

[3] The City suggests that a facial challenge to the Ordinance is inappropriate because it is possible that a "booking service" might exist that is not an ECS or RCS. Opp. at 21. That argument is contrived and meritless. The City fails to identify any booking service not covered by the SCA, and because the Ordinance applies only to "online, computer or application-based platforms," N.Y.C. Admin. Code. § 26-2101(1), booking services invariably will be ECSs or RCSs. Moreover, Airbnb and HomeAway comprise a decisive majority of the homesharing market in the City. To the extent the Ordinance is unlawful as applied to them, it is unlawful in virtually every application. *See United States* v. *Salerno*, 481 U.S. 739, 745 (1987). In any event, the City concedes that an as-applied challenge by Plaintiffs under the SCA would be appropriate here. Opp. at 21 n.16.

[4] While the City has not suggested that the ordinance is severable, if the Court thinks otherwise, an order enjoining compelled disclosure of nonpublic information would be appropriate.

Because the SCA applies, the only salient question is whether the City can conscript homesharing platforms into obtaining mandatory consent from users. The City says that is allowed and would satisfy the SCA. The SCA, however, says otherwise.

The City first argues that because the required disclosure provision of the SCA speaks to whether the government "has" consent, 18 U.S.C. § 2703(c)(1)(C), the City need not "obtain" consent itself and may instead rely on consent that a user provides to a platform. Opp. at 22. The plain text of the SCA, however, says nothing about reliance on consent obtained elsewhere, and the City's position would effectively rewrite the provision to require only that the host "has consented"—to somebody, at some point, for any reason—before the government can require disclosure of the host's information. Such a reading of the statute is inconsistent with the statutory text and design. *See Puerto Rico* v. *Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1949 (2016) ("[O]ur constitutional structure does not permit this Court to rewrite the statute that Congress has enacted."). Further, the Senate Committee Report on which the City seeks to rely directly refutes the City's effort to distinguish "having" consent from "obtaining" consent. The Report expressly states that § 2703(c)(1)(C) allows the government to compel disclosure only if the government "has *obtained* the consent of the subscriber," Selvin Decl., Ex. B at 39 (S. Rep. No. 541, 99th Cong., 2d Sess. (1986)) (emphasis added).

The City's argument is further undermined by a comparison of the required disclosure provision and the voluntary disclosure provision. The former expressly states that "the government entity" must have consent, 18 U.S.C. § 2703(c)(1)(C); whereas the latter allows a provider to voluntarily disclose information "with the lawful consent" of a user, *id*. § 2702(b)(3). In other words, the validity of consent turns on the party obtaining it: once disclosure is not voluntary but compelled—as it is here—consent to the provider is no longer sufficient; the SCA

then requires that the specific "government entity" compelling disclosure "ha[ve] consent." *Id.* § 2703(c)(1)(C).

Here too the legislative history on which the City seeks to rely is contrary to its argument. The Senate Committee Report confirms that consent to a provider's use of customer information is often broader, and certainly different than, consent to governmental disclosure. Selvin Decl., Ex. B at 38 (the SCA permits a company "to divulge, in the normal course of business, such information as customer lists and payments *to anyone except a Government agency*" (emphasis added)). The City's attempt to rely on the House Committee Report, which discusses consent only in the different and less stringent context of § 2702, is also misplaced. *See* Opp. at 26.

Lacking support in both the text and legislative history, the City is left only with the argument that it would be difficult to obtain consent without first obtaining the private information compelled by the Ordinance. Opp. at 23-24. But a complaint about the SCA's requirement that the governmental entity obtain consent does not amount to an argument based on statutory purpose. And more fundamentally, the City *does* have ways of contacting hosts with listings on Airbnb's public website—by using that public information. In any event, the City can serve valid legal process on Airbnb to obtain the specific information that it needs—as it has been doing for the past several years—rather than requiring the bulk transfer of Airbnb's data without cause or review.

Indeed, it is the City's interpretation that yields absurd results. Empowering officials to mandate that platforms obtain advance, non-specific consent from all users, and treating that "consent" as sufficient (even when the governmental entity itself never receives any consent from anybody), would render the SCA's consent requirement meaningless. Under the City's view of the statute, for example, the City could pass an ordinance requiring Google, Amazon, or Facebook to obtain consent from all users to sweeping disclosures about users—and then assert that it acted

consistent with the SCA. This reading would gut the SCA, leaving users and platforms at the mercy of local officials. That, of course, is the opposite of what Congress intended.

At the end of its SCA discussion, the City proclaims that Airbnb's current privacy policy—embodied in its user agreement—already satisfies § 2703(c)(1)(C)'s consent requirement. Opp. at 25. But no reasonable construction of Airbnb's privacy policy would permit wholesale disclosure of all user data to the government. As the City knows, Airbnb resists subpoenas that are unreasonable or overbroad, *cf.* Countryman Decl. ¶ 9, often successfully, which would not be the case if hosts had already given unlimited consent to disclosure of their information.

Ultimately, no matter what terms govern the relationship between Airbnb and its hosts, the City still has its own affirmative obligation under the SCA to obtain consent (or use other legal process) in order to obtain private data. The City cannot shift that burden by requiring platforms like Airbnb to condition the use of their services on City-mandated terms. Nor can it evade that burden by invoking Airbnb's existing user agreement, which makes no provision for giving consent to government entities compelling disclosure. Because the Homesharing Surveillance Ordinance requires Airbnb to disclose data in a manner forbidden by the SCA, it is preempted.

### C. Compelled Speech

The Homesharing Surveillance Ordinance requires Airbnb to tell its New York City hosts that (1) they must consent to the disclosure of their sensitive personal data to the City; (2) their use of the platform will constitute "consent" to that disclosure; and (3) the disclosure will be to an agency widely known for targeting hosts. Against the background of the City's open and notorious campaign to harass homesharing hosts—undisputed by the City here—the threat that this statement conveys will be widely understood. As set forth in Airbnb's opening brief, the First Amendment forbids the City from mandating that Airbnb express this menacing message. *See* Br. at 28-30.

The City responds first by asserting that Airbnb's existing user agreement satisfies the need for consent. Opp. at 28. Once again, that is wrong for the reasons set forth above. It is also belied by the fact that, in drafting the Ordinance to include the compelled consent provision, the City believed that it had to require additional speech to obtain consent to comply with the SCA.

The City next argues that the Ordinance regulates only conduct, not speech. Opp. at 28-29. Unless the City has discovered a new method of obtaining consent without using words, Airbnb assuredly must speak—and must do so in a threatening, highly expressive manner that is central, not "incidental," to the City's plan. *See Sorrell* v. *IMS Health Inc.*, 564 U.S. 552, 567 (2011). The message that Airbnb must express, moreover, is no mere disclosure of truthful information about its services, as in *Zauderer* v. *Office of Disciplinary Counsel*, 471 U.S. 626, 561 (1985). Instead, it is a mixed commercial and political message about homesharing in New York City and the City's intent to target hosts. Compelled speech of this kind faces stringent review. *See Rubin* v. *Coors Brewing Co.*, 514 U.S. 476, 491 (1995); *Riley* v. *Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988).

Under the appropriate standard of review, even accepting as true the City's factual representations about the purpose of the Homesharing Surveillance Ordinance, its speech mandate is unconstitutional. The City reasons that (because of the SCA) it can address alleged problems relating to homesharing only by compelling platforms to demand consent from hosts. Opp. at 33-34. The City can achieve its goal through lawful and less coercive means. Rather than compel speech as a method of evading federal restrictions on access to private information, the City could simply comply with the SCA and use legal process, which would not only allow for precompliance review, but would also allow the City to obtain the data it views as necessary to enforcing laws against illegal hotels in New York City.

## II. AIRBNB SATISFIES THE OTHER PRELIMINARY INJUNCTION FACTORS

The City does not dispute that the balance of the equities and public interest favor an injunction. *See* Br. at 33-34. And it correctly recognizes that if Airbnb can demonstrate a probability of success on the merits of its constitutional claims, it can also demonstrate irreparable harm and thus entitlement to a preliminary injunction. Opp. at 34.

The City has no answer to Airbnb's other bases for irreparable harm. It does not dispute that Airbnb faces such harm because of (1) the Hobson's choice of complying with an unlawful requirement or incurring stiff penalties for non-compliance, and (2) the competitive disadvantage the Ordinance imposes. *See* Br. at 31-32. And while the City asserts that Airbnb will not suffer loss of host goodwill, this argument rests on the same flawed premise discussed above that hosts have "already agreed" to sharing their data with enforcement officials. Opp. at 35. Finally, although the City suggests that Airbnb's "ordinary compliance costs" are insufficient, *id.*, Airbnb's costs are not typical compliance costs, but rather reflect the extensive preparations that Airbnb will be forced to undertake as implementation of the Ordinance approaches. Countryman Decl. ¶ 25.[5]

## CONCLUSION

For the reasons outlined above as well as those set forth in Airbnb's moving papers, the Court should grant Airbnb's motion and preliminarily enjoin the Homesharing Surveillance.

---

[5] Klossner suggests that there should be no compliance costs because Airbnb has developed datasharing systems in other cities. Klossner Decl. ¶ 36. Klossner provides no support for the suggestion that those other regimes are much like the Homesharing Surveillance Ordinance. In fact, in those licensing regimes, *hosts* share information with a city, and Airbnb supplies anonymized information that supports the licensing system.

Dated: New York, New York
October 1, 2018

/s/ Roberta A. Kaplan
Roberta A. Kaplan
John C. Quinn
KAPLAN, HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 763-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com

Sharon L. Nelles
John G. McCarthy
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000
nelless@sullcrom.com
mccarthyj@sullcrom.com

*Attorneys for Plaintiff Airbnb, Inc.*