# KAPLAN HECKER & FINK LLP

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

Direct Dial: (212) 763-0883
Direct Email: rkaplan@kaplanhecker.com

September 13, 2019

**Via ECF**

The Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Airbnb, Inc.* v. *City of New York*, No. 18 Civ. 7712

Dear Judge Engelmayer:

      We write on behalf of Plaintiff Airbnb, Inc. ("Airbnb") in the above-referenced action to request a pre-motion conference concerning Airbnb's anticipated motion for summary judgment.

      In August 2018, New York City enacted an unprecedented surveillance ordinance that would require homesharing platforms like Airbnb, on a monthly basis, to disclose troves of commercially sensitive information, including personal information about their hosts and how they are using their homes. *See* N.Y.C. Admin. Code § 26-2101 *et seq*. As the Court has already recognized, the information compelled by the Homesharing Surveillance Ordinance amounts to a "wholesale replica of [a] booking service's database as to New York City users." Opinion & Order, ECF No. 92 ("PI Decision"), at 33.[1] Booking services must make their monthly reports to the Office of Special Enforcement ("OSE"), a City law enforcement agency, whose inspection teams include New York City Police Department officers. *See* N.Y.C. Admin. Code § 26-2101(a); Deposition of Christian Klossner ("Klossner Dep.") at 37. Failure to comply would put a booking service at risk of ruinous financial penalties. *See* N.Y.C. Admin. Code § 26-2104.

      On January 3, 2019, the Court preliminary enjoined implementation of the Ordinance, holding that it likely violated the Fourth Amendment for two independent reasons. First, the Ordinance provides no mechanism for precompliance review before a neutral arbitrator. PI Decision at 37 ("The City . . . denied . . . that pre-compliance review is required of the monthly provision of data that the Ordinance compels. . . . The City is wrong."); *see also id.* at 39. Second, the Ordinance is unreasonably broad and untailored, and its demands for information extend into perpetuity. PI Decision at 34 ("[E]ven if this Court's pre-effective-date assessment of the reasonableness of the Ordinance qualified as constitutionally adequate pre-compliance

---

[1] The Ordinance demands, among other things, the physical addresses of short-term rental accommodations; the full names, physical addresses, phone numbers, and email addresses of hosts; the number of days that short-term rental accommodations were booked; a statement as to how the accommodations were inhabited during the booking; and the total fees received by booking services for such bookings. N.Y.C. Admin. Code § 26-2102(a).

review . . . it is likely that the Ordinance's categorical demand that all booking services make sweeping monthly data productions would be held unreasonable[.]"); *see also id.* at 33.

As the parties agreed at the outset, the issues in this case are "primarily legal in nature." PI Decision at 11 (citation omitted). Nothing in discovery has altered or undermined the Court's prior analysis or created any "genuine dispute as to any material fact"—to the contrary, discovery has only confirmed that Airbnb is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Accordingly, for substantially the same reasons set forth in the PI Decision, and as further explained below, this Court should grant summary judgment in Airbnb's favor and issue a permanent injunction barring the Ordinance from being enforced. *See Am. Freedom Def. Initiative* v. *Metro. Transp. Auth.*, 889 F. Supp. 2d 606, 611 (S.D.N.Y. 2012) ("[T]he standard for a permanent injunction is essentially the same as for a preliminary injunction, the difference being that the plaintiff must show actual success rather than a likelihood of success.").

The Fourth Amendment of the U.S. Constitution functions to safeguard "the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara* v. *Mun. Court of City and Cty. of San Francisco*, 387 U.S. 523, 528 (1967). It protects not only individuals, but businesses and their papers as well. *See Hale* v. *Henkel*, 201 U.S. 43, 76–77 (1906); *see also City of Los Angeles* v. *Patel*, 135 S. Ct. 2443, 2453 (2015). As a result, "compelled production from home-sharing platforms of user records" falls easily within the purview of the Fourth Amendment. PI Decision at 20; *see also id.* at 22 (holding that "platforms have privacy interests in their user-related records that 'are more than sufficient to trigger Fourth Amendment protection'" (citation omitted)).

The Homesharing Surveillance Ordinance fails to pass muster under the Fourth Amendment for two independent reasons. *First*, the Ordinance provides no mechanism for pre-compliance review. There are narrow exceptions to the government's obligation to obtain a warrant before it may demand access to private information. *See Arizona* v. *Gant*, 556 U.S. 332, 338 (2009). In the context of an "administrative search," where the "primary purpose of the search[] is distinguishable from the general interest in crime control," a warrant supported by probable cause is generally not required, but the subject of a search must still have "an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 135 S. Ct. at 2452; *see also* PI Decision at 31, 37. Because neither the Ordinance nor its implementing regulations provide any such opportunity, the Ordinance violates the Constitution. *See* Final Rules Governing Required Disclosures of Short-Term Rental Transactions By Booking Services, ECF No. 110-1. Nothing in discovery changes the landscape on this issue, as the City itself admits. *See* Def's Responses and Objections to Airbnb's Requests for Admission at 7.

*Second*, even setting aside its lack of a precompliance review mechanism, the Ordinance is unconstitutional because it makes untailored, perpetual and burdensome demands for information. "[W]hen an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive." *See* v. *City of Seattle*, 387 U.S. 541, 544 (1967). But as this Court has observed, the Ordinance is "the antithesis of a targeted administrative subpoena for business records." PI Decision at 33. It compels disclosure of a voluminous array of sensitive

KAPLAN HECKER & FINK LLP

3

business records; applies "across-the-board to all short-term listings in New York City . . . regardless whether there is any factual basis whatsoever to suspect that any particular listing, or user, or building, or complex, at issue is in violation of the Multiple Dwelling Laws"; and "extend[s] into perpetuity." *Id.* at 34.  And while the unreasonable breadth of the Ordinance is clear on the face of the law, it is underscored by the testimony of Christian Klossner, OSE Executive Director, who admitted that "the law would potentially require reporting of transactions that were not in violation of the law."  Klossner Dep. at 335.[2]

What's more, the undisputed factual record makes clear that the City is fully capable of obtaining data purportedly relevant to OSE's law enforcement objectives without the Ordinance—and without treading so heavily on the privacy rights of businesses that operate in the City.  Klossner testified that OSE has successfully obtained listing information from Airbnb *each time* it has subpoenaed Airbnb.  In fact, he admitted that by December 2018, OSE's "subpoenas [had grown] in scope, duration . . . [and had become] more adaptive to the particular investigative needs," and that OSE had gone "from not only obtaining compliance in relation to a limited subpoena, but now obtaining compliance in response to subpoenas that seek a broader swath of information about larger operations and larger targets."  *Id.* at 316; *see* PI Decision at 35 (finding no evidence that OSE's compliance with "Fourth Amendment standards governing administrative subpoenas, including tailoring, is impractical or destined to be ineffectual").

Airbnb's compliance with a February 2019 subpoena puts the unreasonable nature of the Ordinance in even starker relief.  That subpoena sought substantially the same types of data as the Ordinance, for thousands of listings.  Klossner Dep. at 102, 292–93.  Unlike the Ordinance, however, the February 2019 subpoena was tailored, requesting information about specific listings identified by listing ID and certain criteria corresponding to the City's views on illegality.  *Id.* at 288, 291.  The subpoena also was limited to a defined time period, and Airbnb, of course, had the opportunity to object to the subpoena.  *Id.* at 290.  Airbnb and OSE reached a settlement concerning compliance with the subpoena.  *Id.* at 294. That settlement permits Airbnb to produce significant data on an anonymized basis; permits OSE to issue follow-up requests for de-anonymized data; and allows Airbnb to challenge certain follow-up requests in court for want of a "good-faith investigative basis."  *Id.* at 298–99.[3]

For all these reasons, the Court should grant summary judgment in Airbnb's favor and permanently enjoin the Ordinance from taking effect.

---

[2] For substantially the same reasons, the Ordinance also fails to pass muster under Article I, Section 12 of the New York Constitution, which "affords greater protection against warrantless searches than the U.S. Constitution."  *5 Borough Pawn, LLC* v. *City of New York*, 640 F. Supp. 2d 268, 278 (S.D.N.Y. 2009); *see also People* v. *Scott*, 79 N.Y.2d 474, 498–99 (1992) (Section 12 requires that administrative searches be "narrowly and precisely tailored" and notes that they "pass constitutional muster" only if the industry is one subject to "pervasive governmental supervision").

[3] Of course, the "mere fact that [OSE] may be made more efficient" if allowed to compel overbroad data disclosures without precompliance review cannot serve as a justification for the Ordinance.  *Gant*, 556 U.S. at 349.  It is nevertheless worth noting that discovery has revealed that OSE was not the impetus behind the Homesharing Surveillance Ordinance in the first place.  OSE did not even participate in discussions about the Ordinance until a month or two before Klossner testified before City Council about the law—after hotel industry lobbyists had already reviewed and commented on draft legislation.  Klossner Dep. at 215–16, 218–19, 267–68.

KAPLAN HECKER & FINK LLP                                                                                             4

                                      Respectfully submitted,

                                      */s/ Roberta A. Kaplan*

                                      Roberta A. Kaplan

cc:    Counsel of Record (via ECF)