# KAPLAN HECKER & FINK LLP

350 Fifth Avenue
Suite 7110
New York, NY 10118

Direct Dial: (212) 763-0883
Direct Email: rkaplan@kaplanhecker.com

(212) 763-0883
www.kaplanhecker.com

September 20, 2019

<u>**Via ECF**</u>

The Honorable Paul A. Engelmayer
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Airbnb, Inc.* v. *City of New York*, No. 18 Civ. 7712

Dear Judge Engelmayer:

      We write on behalf of Plaintiff Airbnb, Inc. in the above-referenced action in response to the City's letter concerning its anticipated motion for summary judgment.

      Much of that letter rehashes issues that this Court already decided. The City begins by characterizing the Homesharing Surveillance Ordinance as requiring disclosure of "a limited amount of information" and claims that its "limited" scope makes the Ordinance constitutional. Letter from Karen B. Selvin, ECF No. 120 ("City Letter"), at 1, 3. But, as this Court determined, "the scale of the production that the Ordinance compels" is "breathtaking" and "cannot be credibly described as 'limited in scope.'" Opinion & Order, ECF No. 92 ("PI Decision"), at 33, 39. The City's 30(b)(6) witness effectively rejected its lawyers' characterization as well, testifying that the City expects monthly reports under the Ordinance to contain information about "[p]ossibly tens of thousands" of listings, including listings that are "not in violation of the law." Deposition of Christian Klossner ("Klossner Dep.") at 335, 344.

      The City also insists that it need not provide booking services any opportunity for "pre-compliance review before a neutral arbiter." City Letter at 3. When the City made this same argument before, this Court flatly declared that "[t]he City is wrong." PI Decision at 37. Discovery has confirmed that precompliance review is not, and will not be, available. *See* Def's Responses and Objections to Airbnb's Requests for Admission at 7; Final Rules Governing Required Disclosures of Short-Term Rental Transactions by Booking Services, ECF No. 110-1. Finally, the City argues that even if booking services were entitled to precompliance review, "the instant action provides [it]." City Letter at 3. The Court rejected this nonsensical argument too, PI Decision at 38–39, and the City is still without any support for it.

      The remainder of the City's letter is made up of generalized statements of purportedly applicable law and is devoid of any discussion of the factual record. Nevertheless, the City appears to offer two new justifications for the Ordinance.

*First*, the City argues that Airbnb has no reasonable expectation of privacy in the monthly disclosures that the Ordinance compels and, thus, the City is free to demand troves of sensitive records with no concern for the Constitution.

As an initial matter, the City ignores key authorities making clear that the detailed customer and transaction records here are the exact type of business records that the Fourth Amendment protects. *City of Los Angeles* v. *Patel*, for instance, concerned an ordinance that required hotel operators to allow inspection of registries containing information about guests, the rates they paid, and the timing of their arrival and departure. 135 S. Ct. 2443, 2448 (2015). As the Ninth Circuit *en banc* explained, "business owners are [not] required to prove" a reasonable expectation a privacy in their private records, "any more than homeowners are required to prove that papers stored in a desk drawer are subject to a reasonable expectation of privacy." *Patel* v. *City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013) (en banc). And the Supreme Court agreed, facially invalidating the ordinance despite "the fact that some hotels chose to make registries accessible to the public." *Patel*, 135 S. Ct. at 2456. The records here are virtually indistinguishable from those in *Patel*, and Airbnb's "privacy interests in [them] 'are more than sufficient to trigger Fourth Amendment protection.'" PI Decision at 22; *see also id.* at 20 ("[I]t is long settled that the Fourth Amendment's protection of 'papers' covers business records.").

The City's suggestion that Airbnb has forfeited this protection pursuant to the third-party doctrine falls flat as well. At a minimum, application of that doctrine requires that the information at issue actually have been conveyed to a third party. In *United States* v. *Miller*, for instance, Miller challenged subpoenas for checks, deposit slips, and monthly statements that the government had issued to Miller's banks. 425 U.S. 435, 438 (1976). Because Miller had "neither ownership nor possession" of the documents in question, and the documents were not "confidential" but "exposed to [bank] employees in the ordinary course of business," Miller had no reasonable expectation of privacy in the banks' records. *Id.* at 440, 442. In *Smith* v. *Maryland*, the Court similarly found no reasonable expectation of privacy in the phone numbers that Smith dialed, which were "voluntarily conveyed" to his telephone company and captured by a pen register at the company's office. 442 U.S. 735, 744 (1979); *see also United States* v. *Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017) (no reasonable expectation of privacy in IP and other routing information transmitted to internet service provider).

The case here is entirely different. Airbnb discloses limited information, about a limited set of hosts, to a limited set of entities, and in no circumstances does it share anything approaching the monthly report that the Ordinance requires. For instance, Airbnb sometimes uses external customer service vendors and, in "discre[te] targeted situations," may disclose information like the number of nights booked so that a customer service representative can respond to an inquiry or complaint. Deposition of David Countryman at 141. Airbnb also uses the Google Maps API, a tool that allows Airbnb to verify that an address entered on an Airbnb listing page has a proper address format. *Id.* at 136. The City has characterized this as "provid[ing Google] with a host's listing address," *id.*, but verifying addresses through an API is not the same as providing a list of addresses to Google, and in any event this stand-alone address information is not connected to the wealth of other information that the Ordinance requires booking services to report—including the name of the host; the host's contact and banking information; listing type; booking activity for the listing; and the fees that the listing generates.

KAPLAN HECKER & FINK LLP

3

In effect, the City seeks to justify a perpetual obligation to turn over a comprehensive dataset about New York City hosts, listings, and transactions based on the fact that Airbnb has "provided"—subject to strict protections—discrete pieces of information to third parties in limited instances for business purposes. The City has no basis for seizing the mosaic based on the disclosure of just a few tiles. In these circumstances, the third-party doctrine does not apply.[1]

Even if the third-party doctrine were relevant, the City advances an outdated, oversimplified view of its contours. As the Supreme Court has made clear, a third party's actual possession of documents or information does not fully determine a person's reasonable expectation of privacy. *Carpenter* v. *United States*, 138 S. Ct. 2206, 2219 (2018) (*Smith* and *Miller* "did not rely solely on the act of sharing"). Here, Airbnb does not disclose the dataset compelled by the Ordinance; has robust internal policies protecting its sensitive business records; follows strict data minimization policies; and requires its closely vetted vendors to agree to appropriate confidentiality provisions. For all these reasons, Airbnb has not lost the protections historically afforded to business records like the ones at issue here.[2]

*Second*, the City argues that Plaintiffs "collect from a variety of sources an extensive amount of information pertaining to their hosts, which the City does not seek," and thus the Ordinance is "reasonably tailored and will aid the City in enforcing the applicable short-term rental laws." City Letter at 3.

That the City can imagine even more intrusive demands for information does not save the current Ordinance from invalidation. The Fourth Amendment is not reserved for only the most tyrannical of laws, and already the Ordinance "dwarfs" the law facially invalidated in *Patel*. PI Decision at 33. Nor does the prospect of "aiding" law enforcement advance the City's cause. The data OSE obtains is fed to inspection teams that include NYPD and other law enforcement officers. It might "maximize[] law enforcement efficacy" to do away with a precompliance review requirement, but that is hardly a justification for doing so. *Id.* at 35. Discovery only reinforced the Court's prior determination in this regard. The City conceded that subpoenas offer an effective alternative to the Ordinance, that OSE has obtained listing data from Airbnb through each subpoena it has issued, and that OSE subpoenas have become "broader" over time while remaining "adaptive to [OSE's] particular investigative needs." Klossner Dep. at 316.

For all the reasons set forth above, the City's motion for summary judgment should be denied.

---

[1] The cases the City cites are also distinguishable because none justifies a search *of a party* based on that party's past disclosure of information to others. The third-party doctrine concerns records that the party claiming a privacy interest "neither own[s] nor possess[es]" and thus do not constitute that party's "private papers." *Miller*, 425 U.S. at 440. Where a party has possession of the records that the government seeks, the party enjoys the core Fourth Amendment protection against "compulsory production of private paper." *Hale* v. *Henkel*, 201 U.S. 43, 76 (1906).

[2] This is especially true given that an "attempt by a municipality in an era before electronic data storage to compel an entire industry monthly to copy and produce its records as to all local customers would have been unthinkable under the Fourth Amendment." PI Decision at 40. The Supreme Court has sought to "assure[ ] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted," *Kyllo* v. *United States*, 533 U.S. 27, 34 (2001), and has cautioned against extending the third-party doctrine to circumstances where technology enables surveillance at levels not previously possible, *Carpenter*, 138 S. Ct. at 2214.

KAPLAN HECKER & FINK LLP  4

Respectfully submitted,

*[signature]*

Roberta A. Kaplan

cc:   Counsel of Record (via ECF)