## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into by and between the City of New York (the "City") and Airbnb, Inc. ("Airbnb"). The City and Airbnb are sometimes referred to below collectively as "Parties" and individually as a "Party." This Agreement is effective on the date the last one of the Parties has executed the Agreement and provided it to the other Party (the "Effective Date").

## RECITALS

The Parties make this Agreement with reference to the facts and circumstances set forth below:

A.      On July 18, 2018, the New York City Council passed Intro. No. 981-A. On August 6, 2018, the New York City Mayor signed Intro. No. 981-A, and Intro. No. 981-A became Local Law No. 146 of 2018 ("Local Law 146").

B.      On August 24, 2018, Airbnb filed a lawsuit against the City (the "Litigation"), requesting, *inter alia*, that the United States District Court for the Southern District of New York (i) declare Local Law 146 unlawful under the First and Fourth Amendments to the United States Constitution, Article I, Section 12 of the New York State Constitution, and the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.* as well as Article VI, Paragraph 2 of the United States Constitution (*i.e.*, the Supremacy Clause), and (ii) preliminarily and permanently enjoin the implementation and enforcement of Local Law 146. *See Airbnb v. City of New York*, No. 18 Civ. 7712 (S.D.N.Y.). On that same day, HomeAway.com, Inc. ("HomeAway") filed a similar lawsuit against the City. *See HomeAway.com, Inc. v. City of New York*, No. 18 Civ. 7742 (S.D.N.Y.). Those two actions were later consolidated.

C.      On August 30, 2018, and September 4, 2018, Airbnb and HomeAway respectively filed motions to preliminarily enjoin the City's implementation and enforcement of Local Law 146.

D.      On January 3, 2019, the Court granted Airbnb's and HomeAway's preliminary injunction motions on Fourth Amendment grounds and issued a preliminary injunction barring Local Law 146 from taking effect pending resolution of the two plaintiffs' lawsuits against the City ("Preliminary Injunction"). The lawsuits have been ongoing since that time.

E.      After the issuance of the Preliminary Injunction, Airbnb withdrew its claims that Local Law 146 violates and is preempted by the SCA and that it violates the First Amendment.

F.      The Parties recognize and agree that it is in their mutual best interests to resolve their differences as set forth below and have engaged in arm's-length negotiations in an effort to resolve the Litigation.

G.      The Parties also recognize and agree that the agreements and releases set forth below represent the Parties' compromise of disputed matters to avoid the further disruption and expense of the Litigation.

H.    The Parties wish to fully, finally, and completely resolve and dispose of all civil charges, claims, causes of actions, complaints, demands, liabilities, rights, and obligations, losses, or damages of any kind, known or unknown, arising out of or relating to the Litigation.

ACCORDINGLY, in view of the foregoing Recitals, and in consideration of the agreements and releases set forth below, the Parties agree as follows:

## 1.    SETTLEMENT TERMS

### 1.01    New Legislation.

1.01.1   The Office of the Speaker of the City Council and the Office of the Mayor of the City of New York shall make best efforts to amend the New York City Administrative Code by passing the legislation attached to this Agreement as Exhibit A (the "New Local Law"), which would amend Sections 26-2101, 26-2102, and 26-2104 of the New York City Administrative Code. For the avoidance of doubt, the New Local Law will not take effect until 180 days after it becomes law. As a result, neither Airbnb nor any other booking service will be required to report any information to the City under the New Local Law relating to the period prior to the date on which the New Local Law takes effect.

1.01.2   The Parties acknowledge their mutual expectation that the Preliminary Injunction shall remain in effect until the dismissal of the Litigation, and the City agrees to refrain from taking any action to enforce Local Law 146 prior to such dismissal. The Parties further acknowledge their mutual understanding that once the New Local Law becomes law, the Preliminary Injunction will be moot. For purposes of this Agreement, the New Local Law "becomes law" on the date it is adopted in accordance with Section 37(b) of the New York City Charter.

1.01.3   If for any reason the New Local Law fails to become law within 120 days of the Effective Date, this Agreement will be null and void. For the avoidance of doubt, in the event that this Agreement becomes null and void, Airbnb will have the right to resume the Litigation challenging Local Law 146, and the City reserves all rights to defend Local Law 146.

1.01.4   Within 5 business days of the date the New Local Law becomes law, Airbnb shall dismiss the Litigation pursuant to Rule 41 of the Federal Rules of Civil Procedure with prejudice. The City agrees to cooperate as necessary in connection with such dismissal.

### 1.02    Implementing Rules and Confidentiality.

1.02.1   Subject to the New Local Law becoming law, and consistent with Section 4 of the New Local Law, the administering agency shall make best efforts to propose, for public review and comment, the draft rules implementing the New Local Law attached to this Agreement as Exhibit B.

1.02.2   If for any reason the administering agency fails to propose and promulgate rules implementing the New Local Law within 180 days of the date the New Local Law becomes law, or if any provision of the proposed or final rules implementing the New Local Law is materially inconsistent with Sections 17-04(2), 17-06 (relating to privacy and security of information), and 17-07 (relating to retention and disposal of information obtained in the report) of the draft rules attached to this Agreement as Exhibit B, this Agreement will be null and void. Nothing in this Agreement shall limit the administering agency's authority or ability to propose and adopt rules implementing the New Local Law that are even more protective of privacy and data security than the draft rules attached to this Agreement as Exhibit B, and nothing in this Agreement shall limit Airbnb's right to advocate, through public comment or otherwise, for such rules or protections.

1.02.3   In the event that the City reaches an agreement with another booking service that would provide materially greater rights and/or protections than those afforded to Airbnb by virtue of this Agreement, the City agrees to offer a comparable agreement to Airbnb.

1.02.4   The City will take reasonable steps to secure the confidentiality of reports provided under the New Local Law.

1.02.5   The Parties each represent that records to be provided under the New Local Law may be exempt from disclosure in response to requests pursuant to the Freedom of Information Law ("FOIL"), codified in relevant part as New York Public Officers Law § 87.

1.02.6   Airbnb asserts that the records to be provided under the New Local Law contain proprietary Airbnb business information of a competitively sensitive nature, which if disclosed publicly would cause substantial injury to Airbnb's competitive position, and may be exempt from disclosure in response to FOIL requests under, *inter alia*, Public Officers Law § 87(2)(d). The City acknowledges, but does not concede the validity of, this assertion.

1.02.7   The City asserts that the records to be provided under the New Local Law may be compiled for law enforcement purposes, which if disclosed may interfere with law enforcement investigations, and may be exempt from disclosure pursuant to FOIL under, *inter alia*, New York Public Officers Law § 87(2)(e).

1.02.8   Both Parties assert that records to be provided under the New Local Law may contain sensitive personal information, which if disclosed may constitute an unwarranted invasion of personal privacy, and may be exempt from disclosure pursuant to FOIL under, *inter alia*, New York Public Officers Law § 87(2)(b).

**1.03**   **Airbnb's Implementation and Compliance.**

    1.03.1   The City acknowledges that the consent that Airbnb has obtained or will obtain for purposes of complying with the New Local Law does not constitute consent to any other demand or legal process seeking Airbnb user information.

    1.03.2   The City understands that information reported by Airbnb under the New Local Law is based on information obtained from Airbnb's hosts.

**1.04**   **Agreement Not to Challenge.**

    1.04.1   Subject to Sections 1.04.3 and 1.04.4 below, Airbnb shall not bring or financially support a legal challenge seeking to block implementation or enforcement of the New Local Law.

    1.04.2   Notwithstanding the foregoing, Airbnb retains all rights to defend against any enforcement action or proceeding by the City, but agrees not to argue in such action or proceeding that the New Local Law is invalid, facially or as-applied, on any legal grounds that it asserted, or could have asserted, in connection with its facial challenge to Local Law 146 in the Litigation.

    1.04.3   In the event that the laws governing or relating to short-term rentals are repealed, amended, or otherwise modified in such a material way that the reporting requirements of the New Local Law no longer bear any reasonable relation to suspected violations of state or local short-term rental laws in New York City, Section 1.04.1 will terminate and cease to apply. The Parties agree to confer in good faith regarding any such repeal, amendment, or other modification of law, and Airbnb further agrees to make a good-faith effort to confer with the City at least 15 days before bringing a legal challenge to the New Local Law under Section 1.04.3. Notwithstanding the foregoing, the City does not concede the validity of any such potential legal challenge, and, further, the City reserves all rights to defend the New Local Law against such challenge.

    1.04.4   Notwithstanding the provisions set forth in Section 1.04.1, in the event that another booking service obtains a court order or judgment, which would not otherwise apply to Airbnb, pursuant to which such booking service is not required to comply, in whole or in part, with Section 26-2102 of the New Local Law, Airbnb shall be permitted to bring a legal action or proceeding on the same or substantially similar grounds to obtain the same or substantially similar relief afforded by such court order or judgment unless the City appeals and obtains a stay of such court order or judgment.  The Parties agree to confer in good faith regarding any such court order or judgment obtained by another booking service, and Airbnb further agrees to make a good-faith effort to confer with the City at least 15 days before bringing such legal action or proceeding under Section

1.04.4. Notwithstanding the foregoing, the City does not concede the validity of any such potential legal action or proceeding, and, further, the City reserves all rights to defend against such action or proceeding.

## 2.    RELEASE PROVISIONS

2.01    <u>**Specific Release of the City by Airbnb.**</u> In consideration of the City's agreements and undertakings under this Agreement, and with the exceptions set forth in Section 2.03 below, Airbnb releases and discharges the City, and its current or former officers, directors, employees, attorneys, and agents, from any and all claims, losses, debts, charges, damages, demands, obligations, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, penalties, costs, and expenses, of whatever nature, type, kind, description, or character, whether known or unknown, which Airbnb does, did, or might have, own, or hold, on or before the Effective Date, with respect to Local Law 146 and the Litigation.

2.02    <u>**Specific Release of Airbnb by the City.**</u> In consideration of Airbnb's agreements and undertakings under this Agreement, and with the exceptions set forth in Section 2.03 below, the City releases and discharges Airbnb, and each of its predecessors, successors, affiliates, subsidiaries, and its current or former officers, directors, employees, attorneys, and agents, from any and all claims, losses, debts, charges, damages, demands, obligations, causes of action, lawsuits, liabilities, breaches of duty, misfeasance, malfeasance, promises, controversies, contracts, judgments, awards, penalties, costs, and expenses, of whatever nature, type, kind, description, or character, whether known or unknown, which the City does, did, or might have, own, or hold, on or before the Effective Date, with respect to Local Law 146 and the Litigation.

2.03    <u>**Matters Not Released.**</u> Notwithstanding anything in this Agreement, and for the avoidance of doubt, the Parties do not release any matters relating to the adherence to and enforcement of this Agreement, and Airbnb does not release any objections, defenses, claims, or other legal arguments under the Stored Communications Act, 18 U.S.C. § 2701 et seq., the Fourth Amendment to the United States Constitution, or any other laws, statutes, regulations, or doctrines, in connection with any subpoena, court order, warrant, or other legal demand for Airbnb user information issued by the City or any other entity. Except as set forth in Section 1.04 above, this Agreement shall not be construed as preventing Airbnb from bringing further legal challenges or raising further legal arguments relating to legislation enacted, matters arising, or events occurring after the Effective Date of this Agreement.

## 3.    MISCELLANEOUS PROVISIONS

3.01    <u>**Definitions.**</u>  Unless otherwise defined in this Agreement, all initially capitalized terms have the same meaning as in the New Local Law attached as Exhibit A to this Agreement.

**3.02    Fair, Adequate, and Reasonable Settlement.** Each of the Parties believes this settlement is fair, adequate, and reasonable, and arrived at this Agreement in arm's-length negotiations, taking into account all relevant factors, present and potential.

**3.03    Authority.** The Parties represent and warrant to each other that the person executing this Agreement on its behalf has full authority and capacity to execute this Agreement and to give the releases and other promises contained in this Agreement. If this representation is false or inaccurate, and any claim or matter is asserted against a Party or anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend, and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

**3.04    Voluntary Agreement.** Each of the Parties acknowledges that the Agreement has been fully read, reviewed, and understood by its authorized signatory, and that each Party signs the same freely and voluntarily.

**3.05    Independent Advice of Counsel.** Each of the Parties represents and declares that, in executing this Agreement, it has relied solely upon its own judgment, belief, and knowledge, and the advice and recommendations of its own counsel, concerning the nature, extent, and duration of its rights and claims. The Parties acknowledge that they have executed this Agreement without fraud, duress, or undue influence.

**3.06    No Policy or Practice.** Nothing contained herein shall be deemed to constitute a policy or practice of the City.

**3.07    No Admission of Liability.** Nothing contained herein shall be deemed to be an admission by the City, or its current or former officers, directors, employees, attorneys, and agents, that it acted unlawfully or in any way violated any of Airbnb's rights or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules, or regulations of the United States, the State of New York, the City of New York, or any other rules, regulations or laws of any department or subdivision of the City of New York.

**3.08    Entire Agreement/Construction and Interpretation.** This Agreement constitutes the entire understanding and agreement of the Parties with respect to the settlement of their disputes that are the subject of this Agreement, and it supersedes and replaces all prior negotiations, proposed agreements, and agreements related to such disputes. Each of the Parties acknowledges that no other Party, nor any agent, representative or attorney of any other Party, has made any promise, agreement, covenant, representation or warranty whatsoever, express or implied, concerning the subject matter of this Agreement that is not contained in this Agreement. Any rule of construction, by which any ambiguities

are to be resolved against the drafting party, shall not apply in the interpretation of this Agreement.

**3.09** **Inurement.** The Agreement shall inure to the benefit of and be binding upon each of the Parties and its respective agents, partners, joint venturers, officers, directors, trustees, attorneys, representatives, assigns, subsidiaries, parent companies, and predecessors or success companies.

**3.10** **No Third-Party Beneficiaries.** The Parties do not intend to create any third-party beneficiaries to this Agreement. Except for agents, partners, joint venturers, officers, directors, trustees, attorneys, representatives, assigns, subsidiaries, parent companies, and predecessor or successor companies, no person or entity other than the Parties is intended to be bound by, or shall be bound by, any of the provisions of the Agreement.

**3.11** **Waiver and Amendment.** A non-breaching Party may waive the breach of any provision of this Agreement only by executing a writing. Waiver of any breach shall not be deemed to be a waiver of any other breach of the same or any other provisions of this Agreement. This Agreement may not be modified, amended, supplemented, or terminated except by a written agreement executed by both Parties.

**3.12** **Attorneys' Fees and Costs.** Each of the Parties agrees to bear its own fees and costs in connection with the negotiation and execution of this Agreement and in connection with the Litigation.

**3.13** **Enforcement.** Except with respect to Sections 1.01.1 and 1.02.1 above (violation of which implicates the provisions of Sections 1.01.3 and 1.02.2, respectively), upon a breach by any Party, the aggrieved Party may institute proceedings to obtain injunctive relief against the Party in breach of its obligations.

**3.14** **Governing Law.** This Settlement Agreement is being executed in the State of New York and shall be deemed to be made under, and shall be interpreted in accordance with, the laws of the State of New York and the laws of the United States, as applicable.

**3.15** **Headings.** Captions, sections headings, and numbers have been set forth in this Agreement for convenience only and are not to be used in construing this Agreement.

**3.16** **Further Assurances.** Following the execution of this Agreement, the Parties agree to take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the purposes of this Agreement.

**3.17** **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute together one and the same instrument. The Parties will accept facsimile copies or emailed PDFs of the

signature pages provided that the original signature pages are mailed to the other Party's counsel.

IN WITNESS OF THIS AGREEMENT, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

**AGREED AND ACCEPTED**
**City of New York**

DATE: June 12, 2020                    By: _____

Karen B. Selvin
New York City Law Department
*Counsel for City of New York*

**AGREED AND ACCEPTED**
**Airbnb, Inc.**

DATE: June 12, 2020                    By: _____

Roberta A. Kaplan
Kaplan Hecker & Fink LLP
*Counsel for Airbnb, Inc.*

# EXHIBIT A

Int. No.

By Council Member

A Local Law to amend the administrative code of the city of New York, in relation to requiring booking services to report short-term housing rental transactions

Be it enacted by the Council as follows:

1       Section 1. Section 26-2101 of the administrative code of the city of New York, as added

2   by local law number 146 for the year 2018, is amended by adding a new definition of "qualifying

3   listing" in alphabetical order to read as follows:

4       Qualifying Listing. The term "qualifying listing" means a listing or advertisement that

5   offers a short-term rental via a booking service, and:

6       1. such listing or advertisement offers or appears to offer the short-term rental of an entire

7   dwelling unit or housing accommodation, or

8       2. such listing or advertisement offers or appears to offer a short-term rental for three or

9   more individuals at the same time.

10      § 2. Section 26-2102 of the administrative code of the city of New York, as added by

11  local law number 146 for the year 2018, is amended to read as follows:

12      § 26-2102 Requirements for booking services. a. A booking service shall periodically

13  submit to the administering agency a report of transactions associated with a qualifying listing

14  for which the booking service charged, collected or received a fee, directly or indirectly, for

15  activity described in the definition of booking service. Each short-term rental associated with

16  such fee is considered to be a separate transaction. The report shall be submitted in a time,

17  manner and form established by such agency, including but not limited to, electronic submission

18  in a format established by such agency. The report shall be submitted on a [monthly] quarterly

19  basis, or less frequently as determined by such agency. A booking service need not report any

- 1 -

1    information for transactions associated with a qualifying listing when all such transactions within

2    a reporting period result in the rental of a dwelling unit or housing accommodation for an

3    aggregate of four days or less. Such report shall include the following information for each such

4    transaction or, in instances where such information is unavailable to the booking service, an

5    explanation of why such information is unavailable:

6    (1) The physical address of the short-term rental associated with such transaction,

7    including the street name, street number, apartment or unit number, borough or county, and zip

8    code;

9    (2) The full legal name, physical address, phone number and email address of the host of

10   such short-term rental and the uniform resource locator (URL) and the individualized name and

11   number of such host on such booking service's platform;

12   (3) The individualized name and number and the URL of [such advertisement or] the

13   associated qualifying listing;

14   (4) A statement as to whether such short-term rental transaction involved (i) short-term

15   rental of the entirety of a dwelling unit or housing accommodations in a building or (ii) short-

16   term rental of part of such unit or housing accommodations;

17   (5) The total number of days that the dwelling unit, part thereof or housing

18   accommodations in a building were rented as a short-term rental through such booking service's

19   platform;

20    [(6) The total amount of fees received by such booking service for such short-term

21   rental;] and

22    [(7)] (6) If such booking service collects rent for short-term rentals on behalf of such

23   host, (i) the total amount of such rent received by such booking service and transmitted to such

1   host and (ii) the account name and consistently anonymized identifier for the account number for

2   the account used by such host to receive payments from such booking service or, if such booking

3   service provides an explanation why such anonymized identifiers are unavailable, the account

4   name and account number for such account.

5       b. A booking service shall obtain, from each host using such booking service to offer,

6   manage or administer a short-term rental, lawful consent to provide the information described in

7   subdivision a to the administering agency. Obtaining lawful consent may include, but is not

8   limited to, advising or providing notice to a user of the booking service that new or continuing

9   use of such booking service as a host constitutes consent to such disclosure. It shall not be a

10  defense to a violation of subdivision a that the booking service did not obtain consent.

11      § 3. Section 26-2104 of the administrative code of the city of New York, as added by

12  local law number 146 for the year 2018, is amended to read as follows:

13      § 26-2104 Penalties. A booking service that fails to submit a report in compliance with

14  subdivision a of section 26-2102 shall be liable for a civil penalty, to be assessed once per

15  reporting period for each [set of records corresponding to a listing which] qualifying listing for

16  which any of the information required pursuant to section 26-2102 is missing, incomplete or

17  inaccurate. The civil penalty shall not be more than the greater of $1,500 or the total fees

18  collected during the preceding year by the booking service for transactions related to the

19  qualifying listing. The civil penalties established by this section may be recovered in a

20  proceeding before the office of administrative trials and hearings or a court of competent

21  jurisdiction.

22      § 4. This local law takes effect 180 days after it becomes law, except that (i) the head of

23  the administering agency, as such term is defined in section 26-2101 of the administrative code

1   of the city of New York, may take such measures as are necessary for its implementation,

2   including the promulgation of rules, before such effective date and (ii) the mayor may designate

3   an administering agency, as such term is defined in such section, before such effective date.

EXHIBIT B

**Statement of Basis and Purpose**

Local Law 146 for the year 2018 (LL 146), enacted on August 6, 2018, established a new provision of law: Chapter 21 (sections 26-2101 through 26-2105) of Title 26 ("Housing and Buildings") of the Administrative Code of the City of New York, regarding reporting requirements for short-term residential rentals. Two legal challenges to LL 146 were initiated shortly after its passage, and on DATE, the City Council passed Local Law ### for the year 2020, which amended Chapter 21 of Title 26 of the Administrative Code of the City of New York. Chapter 21 requires online, computer, or application-based platforms, or "booking services," that charge, collect, or receive fees for the use of the platform in connection with short-term rentals to report information about those transactions to OSE. Such information includes: the physical address of the short-term rental; the location online of the advertisement that resulted in the short-rental; information relating to the identity of the host, including contact information; and information related to the scope of the short-term rental transaction. Chapter 21 specifies that it is to be administered by OSE unless specified otherwise by executive order.

The purpose of this proposed rule is to implement Chapter 21 of Title 26 of the Administrative Code of the City of New York. Specifically, this proposed rule would specify the time, manner, and form of reporting by the booking services; establish penalty provisions; establish a process for publishing and maintaining a list of buildings exempt from the reporting requirements; and establish a retention and disposal period for information obtained pursuant to the law. This proposed rule differs from the rule previously published by OSE to implement LL 146 in that it incorporates the differences between LL 146 and Local Law ### for the year 2020, as well as relevant changes in policy and enforcement.

The authority of OSE for these rules is found in section 1043 of the New York City Charter and Chapter 21 of Title 26 of the Administrative Code of the City of New York.

## CHAPTER 17

### REQUIRED DISCLOSURES OF SHORT-TERM RENTAL TRANSACTIONS BY BOOKING SERVICES

§17-01    Definitions
§17-02    Reporting requirements for booking services
§17-03    Method of submission
§17-04    Penalties
§17-05    Exempt transactions based on rentals occurring in certain buildings
§17-06    Privacy and security of information
§17-07    Retention and Disposal of Information Obtained in the Report
§17-08    No Private Right of Action

### §17-01 Definitions

Administering agency. The term "administering agency" means the Office of Special

Enforcement, as established under executive order number 96 for the year 2006, or such other agency as subsequently designated by executive order.

Booking Service. The term "booking service" means a person who, directly or indirectly: (1) provides one or more online, computer or application-based platforms that individually or collectively can be used to (i) list or advertise offers for short-term rentals, and (ii) either accept such offers, or reserve or pay for such rentals; and (2) charges, collects or receives a fee for the use of such a platform or for provision of any service in connection with a short-term rental.  A booking service shall not be construed to include a platform that solely lists or advertises offers for short-term rentals.

Building. The term "building" means a building as defined in the New York city building code that is located in the city.

Class B multiple dwelling. The term "class B multiple dwelling" shall have the meaning ascribed to such term in the housing maintenance code.

Directly or indirectly. The term "directly or indirectly" means a person acting directly or indirectly through any subsidiary or affiliate thereof to perform the activity described in the definition of booking service.

Dwelling unit. The term "dwelling unit" means a dwelling unit, as such term is defined in the housing maintenance code, that is located in a building within the city.

Host. The term "host" means a person other than a booking service, including a co-host, who uses a booking service to offer, manage or administer a short-term rental.

Qualifying Listing. The term "qualifying listing" means a listing or advertisement that offers a short-term rental via a booking service, and: (1) such listing or advertisement offers or appears to offer the short-term rental of an entire dwelling unit or housing accommodation, or (2) such listing or advertisement offers or appears to offer a short-term rental for three or more individuals at the same time.

Short-term rental. The term "short-term rental" means a rental for occupancy of fewer than 30 consecutive days of (i) a dwelling unit or part thereof or (ii) housing accommodations within a building.

## §17-02 Reporting requirements for booking services

1.      A booking service shall submit to the administering agency a report of transactions associated with a qualifying listing for which it charged, collected or received a fee, directly or indirectly, for activity described in the definition of booking service, except those transactions described in §17-05 of this chapter. Each short-term rental associated with such fee is considered to be a separate transaction.  Such report shall include the following information:
      a. The physical address of the short-term rental associated with such transaction, including the street name, street number, apartment or unit number, borough or county, and zip code;

b. The full legal name, physical address, phone number and email address of the host of such short-term rental and the uniform resource locator (URL) and the individualized name and number of such host on such booking service's platform;
c. The individualized name and number and the URL of the associated qualifying listing;
d. A statement as to whether such short-term rental transaction involved (i) short-term rental of the entirety of a dwelling unit or housing accommodations in a building or (ii) short-term rental of part of such unit or housing accommodations;
e. The total number of days that the dwelling unit, part thereof or housing accommodations in a building were rented as a short-term rental through such booking service's platform; and
f. If such booking service collects rent for short-term rentals on behalf of such host, (i) the total amount of such rent received by such booking service and transmitted to such host and (ii) the account name and consistently anonymized identifier for the account number for the account used by such host to receive payments from such booking service or, if such booking service provides an explanation why such anonymized identifiers are unavailable, the account name and account number for such account, provided that a booking service shall, considering its technical capacity, de-identify the account number to the greatest extent possible so as to protect the privacy and security of the account number. De-identification of a unique account number shall be consistent from report to report.

2.    In instances where such information is unavailable to the booking service, the booking service shall provide an explanation of why such information is unavailable.

3.    A booking service need not report any information for transactions associated with a qualifying listing when all such transactions within a reporting period result in the rental of a dwelling unit or housing accommodation for an aggregate of four days or less.

4.    The reports shall be submitted on a quarterly basis.  With the exception of the initial reporting period, the reporting periods shall consist of the following quarters: January 1 to March 31; April 1 to June 30; July 1 to September 30; and October 1 to December 31.  The initial reporting period shall begin on the effective date of Local Law ### for the year of 2020 and end on the last day of the first complete quarter following such effective date.

5.    Each report shall cover transactions occurring during a period that begins with the first day of a reporting period and ends with the last day of that reporting period.

6.    A transaction related to a short-term rental that begins in one reporting period but ends in a subsequent reporting period shall be included in the report covering the reporting period in which such rental concludes.

7.      The initial report shall be submitted not more than 60 calendar days after the conclusion of the initial reporting period. Following the initial report, a booking service must submit the report to the administering agency not more than 45 calendar days after the conclusion of the reporting period.

## §17-03 Method of submission

1.      Each report shall be electronically submitted by a booking service through a secure portal accessible from the administering agency's website. No later than 15 business days after Local Law ### for the year of 2020 takes effect, the administering agency will publish on its website additional guidance on the electronic submission process.

2.      The portal may require a booking service to submit contact information, including an email address, to be used by the administering agency for communications related to booking service submissions.

3.      A booking service may apply for an exception to electronic submission, indicating specifically a proposed alternate secure method of submission and the reporting period(s) for which it seeks the exception. Such exception shall be granted only in the following circumstances, and at the sole discretion of the administering agency:
        a.      the booking service has fewer than 20 hosts;
        b.      the booking service had fewer than 100 short-term rental transactions during the reporting period; or
        c.      the booking service is prevented from using the prescribed submission method based on a technical disruption that is beyond its control or another such unusual circumstance that exists.

4.      The report shall be submitted in an electronic format prescribed and published on the administering agency's website no later than the close of the initial reporting period. Reports not in compliance with the required formatting will be rejected and deemed missing, except for those booking services that were granted an exception pursuant to this section.  The administering agency will provide at least 90 days' notice before any changes to the formatting requirements take effect.  The 90-day notice will be published on the administering agency's website and sent to all booking services who have submitted at least one report previously, via the contact information provided by the booking service.

## §17-04 Penalties

1.      A booking service that fails to submit a report in compliance with the requirements of this chapter shall be liable for a civil penalty, to be assessed once per reporting period for each qualifying listing for which any of the information required pursuant to section 17-02(1) of this chapter is missing, incomplete or inaccurate.

2.      In the event that a booking service's report is missing, incomplete, or

inaccurate, the administering agency will provide the booking service a written notice of deficiencies in compliance.  The notice shall include specific information regarding deficiencies in need of correction. The booking service shall have 15 business days from the date such a notice is provided to either correct the deficiency or provide a written statement explaining why the required information is unavailable or how it is complete or accurate.  The booking service shall submit the corrections or explanation in a manner directed in the notice of deficiency.   Upon the conclusion of the 15 business-day period in which a booking service may cure deficiencies, the administering agency may seek civil penalties for any continuing deficiency.

3.      The civil penalty shall not be more than the greater of $1,500 or the total fees collected during the preceding year by the booking service for transactions related to the qualifying listing for which there is missing, incomplete or inaccurate information being reported.  Penalties based on total fees shall not include any fees that were used to assess a previous penalty.

4.      Civil penalties established by this section may be imposed and recovered in a proceeding before the office of administrative trials and hearings or a court of competent jurisdiction.

## §17-05 Exempt transactions based on rentals occurring in certain buildings

1.      The administering agency will publish a list of addresses for buildings it has reason to believe at the time of such publication are class B multiple dwellings lawfully used for transient occupancy. Booking services are not required to include in reports transactions which are based on a short-term rental occurring in a building on this list, and no penalties shall be assessed based on the absence of or material deficiencies for transactions occurring at these addresses in such report.

2.      Inclusion or lack of inclusion on such list does not alter and may not be deemed to alter the legal occupancy or zoning use group of a building or portion thereof as described in the certificate of occupancy or as otherwise determined by the Department of Buildings ("DOB").

3.      The administering agency will publish the list of exempt buildings on its website no later than 15 business days after Local Law ### for the year of 2020 takes effect.  The list shall be updated every six months thereafter, and published in the same location.

4.      The owner, as defined in the housing maintenance code, of a building not included on the list may apply to the administering agency for a review of the building's legal occupancy and inclusion on the list. Any individual, including, but not limited to, owners, tenants, neighbors, or civic groups may apply to the administering agency for a review of a building's legal occupancy and removal from the list.

5.      An application for inclusion on or removal from the exempt buildings list shall indicate the basis for adding or removing the building to or from the list, and must include all documents and statements supporting the application.  The application must

include the currently applicable certificate of occupancy, if one is available from the DOB.  If no currently applicable certificate of occupancy is available, the application must include other relevant and applicable documentation of the current lawful uses of the multiple dwelling which the applicant is seeking to be added to or removed from the list.  Such documentation may include I-cards maintained by the Department of Housing Preservation and Development or other records maintained by the DOB regarding the subject multiple dwelling, including DOB job applications.  The supporting documents and statements shall be submitted to the administering agency in the particular format specified on the administering agency's website.

6.      The application must be accompanied by payment to the City of a $200 processing fee.  The administering agency may waive the processing fee upon request of the applicant if doing so would be in the public interest.  If an application is withdrawn before the administering agency conducts its review, partial or full refund of processing fees shall be provided upon application to the Comptroller of the City of New York, and upon verification of claim by the administering agency.

7.      The administering agency will review all documents and statements submitted in support of the application, and may consider any other information it deems relevant.

8.      The administering agency will notify the applicant in writing of the final agency decision within 60 days of receipt of the application.

9.      Subsequent applications for review of a previously reviewed building filed by the same applicant will only be considered if there has been a change in the legal occupancy occurring after the previous agency decision.

**§17-06 Privacy and security of information**

1.      Information submitted in the report shall be available for public review only to the extent required by federal, state and local law.

2.      Unless otherwise required by federal, state or local law, reports submitted pursuant to this chapter and information contained therein shall be used by the administering agency and the personnel of agencies assigned to such administering agency solely for purposes related to the enforcement of laws relating to short-term rentals, and will be kept confidential by the administering agency and such personnel, and will not be revealed by the administering agency or such personnel in any other manner or under any other circumstances.

3.      Identifying information, as defined in section 23-1201 of the administrative code, will be collected, retained, and disclosed by the administering agency only in compliance with this chapter, in accordance with the requirements and approvals required by chapter 12 of title 23 of the administrative code, and only with all approvals required by that chapter.

4.      When receiving requests for information in the reports pursuant to the New York state freedom of information law ("FOIL"), the administering agency will consider

whether disclosure of such information would constitute an unwarranted invasion of personal privacy under sections 87(2) and 89(2) of the new york state public officers law, and will deny access to those portions of the records that would constitute such an invasion if released. In accordance with section 89(2)(c) of the new york state public officers law, the administering agency may withhold identifying information, prior to making records available for public inspection. In the event that the administering agency is compelled by law to disclose such records without withholding the identifying information, the administering agency will, prior to such disclosure, notify the individuals whose identifying information must be disclosed. Submission of such notice to the email address provided by the booking service for each such individual shall constitute an adequate attempt to notify the individual. The administering agency will also consider whether their disclosure would interfere with law enforcement investigations or judicial proceedings or deprive a person of a right to a fair trial or impartial adjudication, and are thereby exempt from disclosure pursuant to section 87(2)(e) of the new york state public officers law. The administering agency will also consider whether the records are exempt from disclosure under any other exemption enumerated in section 87(2) of the new york state public officers law.

5.      If a booking service requests, at the time of submission of a report required by this chapter, that the administering agency exempt such records from disclosure pursuant to the new york state public officers law § 87(2)(d), and the administering agency determines that it is compelled by law to disclose such records, then the administering agency will notify such booking service of the disclosure of such records at least 10 calendar days prior to such disclosure.

6.      When receiving demands for records pursuant to subpoena, court order, or other legal process, the administering agency will consider whether it is appropriate or feasible to seek a court order quashing, modifying, or protecting against subsequent disclosure.

7.      The administering agency will protect the privacy and security of identifying information by implementing appropriate physical, technical and administrative safeguards, in accordance with the city's information technology security standards and requirements relating to the use, transfer and storage of confidential data.

## §17-07 Retention and Disposal of Information Obtained in the Report

1.      The administering agency will retain the reports:
a.      As long as investigations involving the information in the reports remain open; or
b.      For a period of three years after investigations are closed, except that records involved in civil court litigation will be kept for a period of 10 years after close of the case.

2.      Records will be kept in the administering agency offices for three years after investigations are closed, and thereafter in the Records Center in the case of litigation records.

3.      Booking services must retain all submitted reports for three years.

**§17-08 No Private Right of Action**

1.      Nothing contained in this chapter shall be construed as creating any private right of action against the city or any agency, office or employee thereof.